ADAMO DEMOLITION COMPANY v DEPARTMENT OF TREASURY

Docket No. 312667. Submitted November 14, 2013, at Lansing. Decided
December 10, 2013, at 9:00 a.m.

Adamo Demolition Company filed a petition in the Tax Tribunal,
seeking to set aside an assessment against it issued by the
Department of Treasury. The assessment required an addition to
the Single Business Tax Act (SBTA) tax base of petitioner in the
amount of the compensation paid to employees working for
petitioner during the 2005, 2006, and 2007 tax years. Petitioner
had entered into professional-employer-organization agreements
with Mancorp, Inc., in 2005, and with E-Connect, Inc., in 2006 and
2007. Pursuant to the companies' agreements, petitioner's em-
ployees became the employees of the professional employer orga-
nizations, which then leased the employees back to petitioner. The
professional employer organizations paid all the employees' sala-
ries, including the salary of Richard Adamo, the sole owner,
director, and president of petitioner. The tribunal concluded that
respondent should not have attributed the employees' compensa-
tion to petitioner, and imposed $721.60 in costs on respondent,
holding that its position was devoid of arguable legal merit.
Respondent appealed.

The Court of Appeals *held*:

1. Under the SBTA, employers were required to include their
employees' compensation in their tax base. MCL 208.4(4) of the
SBTA defined a professional employer organization as an organi-
zation that provided the management and administration of the
human resources and employer risk of another entity by contrac-
tually assuming substantial employer rights, responsibilities, and
risk through a professional employer agreement that established
an employer relationship with the leased officers or employees
assigned to the other entity by doing all of the following (a)
maintaining the right of direction and control of employees' work,
although this responsibility could be shared with the other entity,
(b) paying wages and employment taxes of the employees out of its
own accounts, (c) reporting, collecting, and depositing state and
federal employment taxes for the employees, and (d) retaining the
right to hire and fire employees. An employee paid by a profes-

sional employer organization under a contract comporting with the requirements of former MCL 208.4(4) was an employee of the professional employer organization for purposes of the SBTA. Accordingly, the employee's compensation was attributable to the professional employer organization. An officer or director of a company could be employed by a professional employer organization under the SBTA. In this case, respondent asserted that Mancorp and E-Connect did not qualify as professional employer organizations under MCL 208.4(4)(a) and (d). Specifically, respondent contended in part that because Adamo was the sole owner, director, and president of petitioner, he could not have been an employee of Mancorp and E-Connect. But contrary to respondent's assertions, there was no evidence that the professional employer organizations compensated Adamo because of his status as an owner of petitioner. Rather, he was compensated for his managerial and administrative duties, and the professional employer organizations retained the right to direct and control Adamo's work and to fire him as an employee providing administrative and managerial services. Further, while E-Connect disclaimed responsibility for the day-to-day supervision and control of the employees under its contract with petitioner, E-Connect did not disclaim the right to control and direct employees' nondaily activities, and E-Connect specifically had the right to participate in major employment decisions including hiring, firing, discipline, and grievance handling. Therefore, the tribunal did not err when it concluded that E-Connect and petitioner permissibly shared the right to direct and control employees' work under the contract. Accordingly, the professional employer organizations' contracts with petitioner complied with MCL 208.4(4), and the tribunal correctly determined that Mancorp and E-Connect qualified as professional employer organizations such that the employees' compensation was not attributable to petitioner.

2. A court may find that a party's action is frivolous and award costs under MCR 2.625(A)(2) when (1) the party initiated the suit for purposes of harassment, (2) the party's legal position was devoid of arguable legal merit, or (3) the party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true. In this case, the evidence did not support the tribunal's finding that respondent's action was frivolous. Contrary to the finding of the tribunal, there was no evidence in the record that respondent repeatedly attempted to challenge the ability of companies to use professional employer organizations after the Legislature permitted their use in MCL 208.4(4). Further, the question whether employees' compensation is properly attributable to a professional employer organization or a leasing company under the SBTA has

been a contentious and unstable area of the law. The tribunal erred when concluded that respondent's position was devoid of arguable legal merit, and its award of costs had to be reversed.

Decision of the Tax Tribunal affirmed with regard to the service providers' status as professional employer organizations, but decision of the tribunal reversed with regard to petitioner's entitlement to an award of costs; remanded to the tribunal for correction of the judgment.

*Maurice S. Reisman, PC* (by *Maurice S. Reisman*), for petitioner.

*Bill Schuette*, Attorney General, *Aaron Lindstrom*, Solicitor General, *Matthew Schneider*, Chief Legal Counsel, and *Kevin T. Smith*, Assistant Attorney General, for respondent.

Before: WHITBECK, P.J., and WILDER and RONAYNE KRAUSE, JJ.

PER CURIAM. Respondent, Department of Treasury (the Department), appeals as of right the Tax Tribunal's (the Tribunal) decision that the Department incorrectly attributed compensation that Mancorp Inc. and E-Connect, Inc. (the service providers) paid to the employees of petitioner, Adamo Demolition Company (Adamo Demolition) during tax years 2005, 2006, and 2007. The Department determined that the service providers were professional employer organizations under MCL 208.4(4) and attributed the compensation on that basis.[1] We affirm the Tribunal's decision regarding the service providers' status as professional employer organizations. But we reverse the Tribunal's finding that the Department's legal position was frivolous and its related award of costs to Adamo Demolition, and we remand to the Tribunal for correction of the judgment.

---

[1] Repealed by 2006 PA 325.

## I. FACTUAL BACKGROUND

The parties stipulated the facts in this case. Richard Adamo is Adamo Demolition's sole owner, sole director, and president. Adamo Demolition entered into professional employer organization agreements with Mancorp in 2005 and with E-Connect in 2006 and 2007, outsourcing its human resource operations to them. Pursuant to these agreements, Adamo Demolition's employees became the service providers' employees, which they then leased back to Adamo Demolition. Adamo provided management and administrative services to Adamo Demolition. The service providers paid all the employees' salaries, including Adamo's salary, and withheld federal income taxes from those salaries.

Pursuant to Mancorp's agreement with Adamo Demolition, Mancorp had the right to (1) "exercise direction and control" over the employees' daily activities or delegate that right to Adamo Demolition, and (2) "hire, promote, reassign, discipline and terminate" employees. Adamo Demolition's agreement with E-Connect provided that E-Connect had the right to consult with Adamo Demolition concerning "all employment and unemployment decisions," including hiring and firing employees, and that Adamo Demolition agreed to use E-Connect's policies and procedures regarding those decisions. It also provided that "the Parties shall share the responsibilities of being the employer of the Covered Employees," and that E-Connect "assigns and delegates to [Adamo Demolition], the responsibility for the day-to-day supervision and control of the Co-Employees. [E-Connect] does not and shall not have any liability, obligation or responsibility therefore whatsoever."

Following an audit, the Department adjusted Adamo Demolition's single business tax base to include the compensation that the service providers paid the employees,

resulting in an increased assessment of $72,362, with interest. Adamo Demolition appealed in the Tribunal.

In its written opinion, the Tribunal relied on the legislative history of MCL 208.4(4) and this Court's decision in *Herald Wholesale, Inc v Dep't of Treasury*.[2] The Tribunal concluded that the disclaimer in Adamo Demolition's contract with E-Connect did not invalidate its status as a professional employer organization. The Tribunal noted that MCL 208.4(4)(a) expressly permitted a professional employer organization to share responsibility for the direction and control of employees' work. The Tribunal also found that Adamo's status as Adamo Demolition's sole shareholder, director, and president did not distinguish this case from *Herald Wholesale*.

Thus, the Tribunal concluded that the service providers were professional employer organizations and the Department should not have attributed the employees' compensation to Adamo Demolition. The Tribunal imposed $721.60 in costs on the Department, holding that its position was devoid of arguable legal merit because of (1) its repeated challenges concerning professional employer organizations, and (2) its attempt to purposefully avoid the precedent established in *Herald Wholesale*.

## II. INTERPRETATION OF MCL 208.4(4)

### A. STANDARD OF REVIEW

This Court's review of the Tribunal's decision is limited.[3] When a party does not dispute the facts or allege fraud, we review whether the Tribunal "made an

---

[2] *Herald Wholesale, Inc v Dep't of Treasury*, 262 Mich App 688; 687 NW2d 172 (2004).

[3] *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 527; 817 NW2d 548 (2012).

error of law or adopted a wrong principle."[4] This Court reviews de novo the interpretation and application of tax statutes.[5]

### B. LEGAL STANDARDS

"The primary goal of statutory interpretation is to give effect to the Legislature's intent."[6] If the statute's language is not ambiguous, this Court will enforce the statute as written.[7] This Court gives statutory language its plain and ordinary meaning.[8] This Court applies the same principles to contractual interpretation, with the purpose of determining and enforcing the parties' intent.[9]

### C. PROFESSIONAL EMPLOYER ORGANIZATIONS UNDER MCL 208.4(4)

Under the Single Business Tax Act, now repealed,[10] employers were required to include their employees' compensation in their tax base.[11] Compensation included all fees paid to employees, officers, and directors.[12]

In MCL 208.4(4), the Legislature provided that an organization is a professional employer organization if it is

---

[4] *Id.* at 527-528.

[5] *Id.* at 528; *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 438; 716 NW2d 247 (2006).

[6] *Ford Motor Co*, 475 Mich at 438.

[7] *Id.* at 438-439.

[8] *Id.* at 439.

[9] See *Klapp v United Ins Group Agency Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003); *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 130-131; 743 NW2d 585 (2007).

[10] Repealed by 2006 PA 325. Unless otherwise noted, all references in this opinion are to the former version of the Single Business Tax Act.

[11] MCL 208.9(5).

[12] MCL 208.4(3).

an organization that provides the management and administration of the human resources and employer risk of another entity by contractually assuming substantial employer rights, responsibilities, and risk through a professional employer agreement that establishes an employer relationship with the leased officers or employees assigned to the other entity by doing all of the following:

(a) Maintaining the right of direction and control of employees' work, although this responsibility may be shared with the other entity.

(b) Paying wages and employment taxes of the employees out of its own accounts.

(c) Reporting, collecting, and depositing state and federal employment taxes for the employees.

(d) Retaining the right to hire and fire employees.

In *Herald Wholesale,* this Court held that an employee paid by a professional employer organization under a contract comporting with the requirements of MCL 208.4(4) is an employee of the professional employer organization, not of the company that leases the employees. Thus, the employee's compensation is attributable to the professional employer organization, not the leasing company.[13] This Court also held that an officer or director of a company can be employed by a professional employer organization.[14]

### D. ADAMO'S STATUS AS ADAMO DEMOLITION'S OWNER

The Department asserts that the service providers did not qualify as professional employer organizations under MCL 208.4(4)(a) or (d), and, therefore, the employees' compensation was attributable to Adamo Demolition.

---

[13] *Herald Wholesale, Inc,* 262 Mich App at 695.

[14] *Id.* at 697; MCL 208.4(4).

First, the Department asserts that this Court's decision in *Herald Wholesale* is distinguishable because the employees in that case were not the company's owners. We conclude that *Herald Wholesale* is not distinguishable.

In *Herald Wholesale*, this Court held that the Single Business Tax Act did not require the plaintiffs to include in their tax base compensation that a professional employer organization paid to the plaintiff's corporate officers when those officers were compensated solely for their management responsibilities.[15] The plaintiffs in that case were Herald Wholesale's corporate officers, whom Amstaff—the professional employer organization in that case—hired to perform managerial, administrative, and executive duties.[16] The plaintiffs' agreement with Amstaff provided that Amstaff retained the right to fully control all personnel decisions.[17] Asserting that the plaintiffs were not Amstaff's employees, the Department attributed to Herald Wholesale the compensation that Amstaff paid to the plaintiffs.[18]

This Court rejected the Department's assertion that the plaintiffs were not Amstaff's employees.[19] This Court concluded in part that the language of MCL 208.4(4) clearly contemplated that a professional employer organization could pay compensation to leased employees *and* officers.[20] This Court reached the same conclusion under the language of MCL 208.5.[21] This

---

[15] *Herald Wholesale, Inc*, 262 Mich App at 691.

[16] *Id*. at 692.

[17] *Id*.

[18] *Id*.

[19] *Id*. at 691.

[20] *Id*. at 695, 697.

[21] *Id*. at 697-698.

Court reasoned that the Single Business Tax Act relied on the federal definition of employee, 26 USC 3401(c), which separately included officers in the definition of employees and thus indicated that an officer is an employee for tax purposes.[22]

We conclude that *Herald Wholesale* is not distinguishable from the facts in this case. This Court's decision in *Herald Wholesale* heavily relied on the fact that the professional employer organization paid the corporation's officers solely for their management responsibilities, not for their actions in another capacity. In this case, the parties stipulated that Adamo's duties as officer and director of Adamo Demolition were minimal. At the hearing before the Tribunal, Adamo testified that his responsibilities primarily included managing projects, maintaining customer relationships, coordinating with other managers, inspecting projects, and maintaining financial records.

The Tribunal found that the service providers did not compensate Adamo as an officer or director of Adamo Demolition. There is no indication that Adamo's compensation was in any way related to his status as the owner of Adamo Demolition. Thus, we conclude that the facts in *Herald Wholesale* are analogous to the facts in this case because there is no evidence in the record that the service providers compensated Adamo for anything other than his managerial and administrative duties.

Second, the Department asserts that the professional employer organization here did not meet MCL 208.4(4)(d) because the service providers could not fire Adamo as the owner of Adamo Demolition. We conclude that the service providers' ability to fire Adamo *as an*

---

[22] *Id.* at 698.

*owner* has no effect on the application of MCL 208.4(4), because the service providers could still fire Adamo *as an employee.*

The service providers compensated Adamo for his management and administrative services—not services as an owner—to Adamo Demolition. Nothing in the service providers' agreements indicates that they required Adamo Demolition's consent to hire or fire employees, including Adamo, or provided that they could not replace Adamo with someone else who would provide the same services. Similarly, the service providers' contracts did not exclude Adamo from the employees over whom they had the right to direct or control. Thus, the service providers complied with MCL 208.4(4) because they retained the right to fire Adamo, or the right to direct and control his work, *as an employee* providing administrative and management services.

The Department asserts that the service providers did not retain the right to fire Adamo because such an action would have no practical effect. According to the Department, even if fired, Adamo could continue his activities on behalf of Adamo Demolition. However, if the service providers fired Adamo, the practical effect would be that he would no longer be the employee of the service providers. They would no longer pay his compensation and withhold his federal income taxes. Thus, any compensation for his performance of the same activities would have to come from Adamo Demolition, not the service providers. In that circumstance, we would agree that Adamo's compensation would be properly attributable to Adamo Demolition. But that is not the circumstance of this case. Here, Adamo provided management and administrative services, and the service providers paid his compensation for providing those services.

We conclude that the service providers' retention of the right to direct, control, hire, and fire employees, including Adamo, complied with MCL 208.4(4)(a) and (d).

### E. THE EFFECT OF E-CONNECT'S DISCLAIMER

The Department contends that Adamo Demolition's agreement with E-Connect failed to comply with MCL 208.4(4)(a) because E-Connect disclaimed responsibility for employees' day-to-day supervision and control. We disagree.

MCL 208.4(4)(a) allows a professional employer organization to share "the right of direction and control of employees' work . . . ." The question here is whether E-Connect's contractual language entirely disclaimed the right to direct and control employees' work or whether it shared that right with Adamo Demolition. The Tribunal concluded that E-Connect's disclaimer effectively shared the right to direct and control employees' work. We agree with the Tribunal's conclusion.

Under the plain language of the contract, E-Connect disclaimed only responsibility "for the *day-to-day* supervision and control" of the employees. [Emphasis added.] E-Connect did not disclaim the right to direct and control employees' nondaily activities, and specifically held rights concerning major employment decisions that did not concern daily activities, such as hiring, firing, discipline, and grievance handling. As a result of the contracts, the service providers were responsible for several significant employment responsibilities, including employees' payroll, tax withholding, benefits, records, insurance, and employment policies. These responsibilities come with significant potential liabilities. We conclude that the Tribunal did not err when it concluded that E-Connect's disclaimer indi-

cated that it and Adamo Demolition *shared* rights to direct and control employees' work, with Adamo Demolition supervising and controlling the employees' daily activities and E-Connect supervising and controlling the employees' nondaily activities.

### III. TAXATION OF COSTS

#### A. STANDARD OF REVIEW

Whether an action or claim is frivolous is a factual finding.[23] This Court must accept the Tribunal's factual findings if "competent, material, and substantial evidence on the whole record" supports them.[24] Substantial evidence supports the Tribunal's findings if a reasonable person would accept the evidence as sufficient to support the conclusion.[25] Substantial evidence "may be substantially less than a preponderance."[26]

#### B. LEGAL STANDARDS

A court may find that a party's action is frivolous under MCR 2.625(A)(2) when (1) the party initiated the suit for purposes of harassment, (2) "[t]he party's legal position was devoid of arguable legal merit," or (3) "[t]he party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true."[27]

---

[23] *Pontiac Country Club v Waterford Twp*, 299 Mich App 427, 439; 830 NW2d 785 (2013).

[24] *Mich Props*, 491 Mich at 527. See also *Pontiac Country Club*, 299 Mich App at 439.

[25] *In re Payne*, 444 Mich 679, 692; 514 NW2d 121 (1994) (opinion by BOYLE, J.); *Wayne Co v Michigan State Tax Comm*, 261 Mich App 174, 186-187; 682 NW2d 100 (2004).

[26] *In re Payne*, 444 Mich at 692 (opinion by BOYLE, J.). See also *Wayne Co*, 261 Mich App at 186-187.

[27] *Pontiac Country Club*, 299 Mich App at 439, quoting MCL 600.2591(3)(a).

A claim is not frivolous merely because the party advancing the claim does not prevail on it.[28]

### C. APPLYING THE STANDARDS

The Department contends that the Tribunal erred by finding that it was attempting to purposefully avoid the application of clearly established precedent. We conclude that evidence on the record did not support the Tribunal's finding that the Department's action was frivolous.

The Tribunal found that the Department's action was frivolous for two reasons: (1) it continued to challenge the ability of operating companies to use professional employer organizations after the Legislature specifically permitted their use in MCL 208.4(4), and (2) it was attempting to purposefully avoid this Court's decision in *Herald Wholesale*, which provided "clear guidance" under the facts in this case.

There is no evidence in the record supporting the Tribunal's finding that the Department continued to challenge the ability of companies to use professional employer organizations for officers and employees given that the record contains no evidence of *repeated* challenges by the Department on this issue. The only challenge contained in this record is the Department's challenge in this case. Adamo Demolition did not provide any evidence that the Department had challenged the use of professional employer organizations in other cases. We conclude that competent, material, and substantial evidence did not support the Tribunal's finding.

There is also no evidence in the record supporting the Tribunal's finding that this Court's decision in *Herald Wholesale* provided clear guidance that the Department

---

[28] *Kitchen v Kitchen*, 465 Mich 654, 662; 641 NW2d 245 (2002).

was attempting to purposefully avoid. To the extent that the Tribunal relied on its finding that the Department repeatedly attempted to challenge professional employment organizations to support its determination that the Department was purposefully avoiding application of *Herald Wholesale*, as previously noted, the record does not support this finding.

Further, a claim is devoid of arguable legal merit if it is not sufficiently grounded in law or fact,[29] such as when it violates "basic, longstanding, and unmistakably evident" precedent.[30] Whether employees' compensation is properly attributable to the professional employer organization or the leasing company under the Single Business Tax Act has been an area of unstable law: the decision of the Court of Claims in *Bandit Indus, Inc v Dep't of Treasury*,[31] the Legislature's subsequent amendment of MCL 208.4(4), this Court's decision in *Herald Wholesale*, and the Tribunal's decision in *McCartney Enterprises, Inc v Dep't of Treasury* that *Herald Wholesale* should be limited to the facts in that case.[32] This shifting legal framework does not provide longstanding and unmistakably evident precedent.

Further, the Department's position in this case was substantially similar to its position in *McCartney Enterprises*, a 2006 decision in which the Tribunal concluded that *Herald Wholesale* did not control the outcome of the case, when the case involved an employee of

---

[29] *Id.*

[30] *DeWald v Isola*, 180 Mich App 129, 136; 446 NW2d 620 (1989).

[31] *Bandit Indus, Inc v Dep't of Treasury*, unpublished opinion of the Court of Claims, issued September 7, 2000 (Docket No. 99-17260-CM). See *Herald Wholesale*, 262 Mich App at 690-693.

[32] *McCartney Enterprises, Inc v Dep't of Treasury*, 16 MTTR 443 (Docket No. 321164), issued July 20, 2006.

a professional employer organization who was also the company's owner.[33] In *McCartney Enterprises*, the Tribunal determined that, because the owner in that case could terminate the contractual relationship, he was not an employee of the professional employer organization.[34] Below, the Department contended that the Tribunal should apply its precedent in *McCartney Enterprises* to this case. While both the Tribunal and this Court disagree with the Department's assertion as it applies to Adamo Demolition, the Tribunal's decision in *McCartney Enterprises* undermines the Tribunal's conclusion that this Court's decision in *Herald Wholesale* provided clear guidance on the issue presented in this case.

Therefore, we conclude that substantial evidence on the record did not support the Tribunal's findings in support of its determination that the Department's position was devoid of arguable legal merit, and we reverse the trial court's award of costs to Adamo Demolition.

### IV. CONCLUSION

We conclude that the Tribunal did not make an error of law when it determined that the employees' compensation was properly attributable to the service providers because the contracts gave them the power to hire, fire, direct, and control employees, including Adamo. But we conclude that substantial evidence in the record did not support the Tribunal's finding that the Department's position in this case was devoid of arguable legal merit.

We affirm the Tribunal's decision regarding the service providers' status as professional employer organi-

---

[33] *Id.*

[34] *Id.*

zations, but reverse the Tribunal's award of costs and remand to the Tax Tribunal for correction of the judgment. We do not retain jurisdiction.

WHITBECK, P.J., and WILDER and RONAYNE KRAUSE, JJ., concurred.