*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

DEPARTMENT OF TALENT & ECONOMIC
DEVELOPMENT/UNEMPLOYMENT
INSURANCE AGENCY,

        Appellant,

v

AMBS MESSAGE CENTER, INC.,

        Claimant-Appellee.

FOR PUBLICATION
September 12, 2019
9:05 a.m.

No. 343521
Jackson Circuit Court
LC No. 17-003129-AE

DEPARTMENT OF TALENT & ECONOMIC
DEVELOPMENT/UNEMPLOYMENT
INSURANCE AGENCY,

        Appellant,

v

GREAT OAKS COUNTRY CLUB, INC.,

        Defendant-Appellee.

No. 343846
Oakland Circuit Court
LC No. 2017-162608-AE

DEPARTMENT OF TALENT & ECONOMIC
DEVELOPMENT/UNEMPLOYMENT
INSURANCE AGENCY,

        Appellant,

v

NBC TRUCK EQUIPMENT, INC.,

        Claimant-Appellee.

No. 343989
Macomb Circuit Court
LC No. 2017-000132-AE

Before: Murray, C.J., and Meter and Fort Hood, JJ.

Per Curiam.

In these consolidated appeals, appellant, Department of Talent and Economic Growth/Unemployment Insurance Agency (the Agency), appeals by leave granted the circuit courts' determinations that claimants, Ambs Message Center, Inc., Great Oaks Country Club, Inc., and NBC Truck Equipment, Inc., were entitled to claim the new employer unemployment insurance tax rate under the Michigan Employment Security Act (MESA). We conclude that the claimants were not entitled to the new employer rate. Therefore, we reverse and remand in each docket.

## I. BACKGROUND

### A. ALTERING THE PROFESSIONAL EMPLOYER ORGANIZATION ARRANGEMENT

The claimants are employers subject to MESA's reporting and contribution requirements. See MCL 421.13(1); MCL 421.19. When calculating the tax rate applicable to an employer's payroll, the Agency generally uses a formula that takes into consideration the amount of benefits distributed to the employer's employees over a specified period. See MCL 421.19(a). The formula is altered, however, for new employers whose base tax is a set rate of 2.7%. See MCL 421.19(a)(1)(*i*). The Agency thereafter incorporates a portion of the employer's employees' actual use of unemployment compensation benefits using the applicable formula until a certain number of years pass, after which the full formula applies (sometimes referred to as the experienced employer formula). See MCL 421.19(a)(1); MCL 421.19(a)(2). For that reason, new employers usually pay a lower tax rate on their payroll than experienced employers.

An employer can cease to be an employer liable to pay the unemployment insurance tax—in relevant part—by transferring its "entire rating account" to another employer, see MCL 421.24(b), or after the "conclusion of 12 or more consecutive calendar quarters during which the employer has not had workers in covered employment," MCL 421.19(a)(1)(*i*). If an employer again becomes liable for contributions to the unemployment insurance system after ceasing to be liable, the Agency must treat the employer as a new employer. MCL 421.19(a)(1)(*i*).

An employer can also cease to be liable to pay unemployment insurance contributions as a contributing employer by entering into a service agreement with a professional employer organization (sometimes referred to as a PEO). Under a typical service agreement, a business transfers its employees to the professional employer organization, which then leases the employees back to the business. The leased employees are treated as the employees of the professional employer organization even though the original employer (now considered the client employer) maintains day-to-day control over the employees. The professional employer organization normally handles all of the human resource matters involving the employees, which includes paying the unemployment insurance obligations related to the payroll of the client employer. See *Adamo Demolition Co v Dep't of Treasury*, 303 Mich App 356, 359-360; 844 NW2d 143 (2013).

Because the professional employer organization was the employer of the employees transferred to it, the professional employer organization historically paid the unemployment insurance contributions required under MESA using its own account and the Agency calculated the tax on the basis of the professional employer organization's use of benefits. The client employer, by contrast, was treated as having no employees and no payroll during the term of the agreement with the professional employer organization.

The Legislature, however, addressed this arrangement with the enactment of the Michigan Professional Employer Organization Regulatory Act, MCL 338.3721 *et seq.*, see 2010 PA 370, and the corresponding changes to MESA, see 2010 PA 383. With the enactment of MCL 421.13m, the Legislature required professional employer organizations to file reports and pay contributions for its client employers by using the account information for the client employer. See MCL 421.13m(2)(a). In other words, for the purpose of calculating the tax rate, the professional employer organization is taken out of the picture, and the rate is calculated based on the number of years the employer has employed a staff—either personally or through the professional employer organization. Although the professional employer organization is still liable to the agency for the tax, the rate is calculated as if the employees remained with the client employer.

Acknowledging the impact of these changes on the client employer/professional employer organization's relationship, the amendment provided that a professional employer organization that was liable for unemployment insurance contributions before January 1, 2011, could choose to use the reporting method stated under MCL 421.13m(2)(a) before January 1, 2014, but was not required to use the reporting method stated under MCL 421.13m(2)(a) until January 1, 2014. See MCL 421.13m(2)(b). Accordingly, by January 1, 2014, the Agency was required to calculate the unemployment insurance tax rate by reference to the client employer's prior account and experience rather than by reference to the professional employer organization's prior account and experience. As such, as of January 1, 2014, every client employer would be taxed at its own rate even though the professional employer organization would be paying the contribution.

The Legislature also addressed how a professional employer organization should calculate the tax rate applicable to client employers who had established a relationship with the professional employer organization before the mandatory change in the method for reporting. The Legislature indicated that, if the client employer met certain eligibility criteria, it would be entitled to treatment as a new employer under the statutory scheme:

> (*i*) For a client employer that is a contributing employer and was a client employer of the PEO on the date that the PEO changed to the reporting method provided in this subdivision, the following rates apply:

> (A) Except as provided in sub-subparagraphs (B) and (C), if the client employer reported no employees or no payroll to the agency for 8 or more calendar quarters or, beginning January 1, 2014, for 12 or more calendar quarters, the client employer's unemployment tax rate will be the new employer tax rate.

(B) If the client employer was a client employer of the PEO for less than 8 calendar quarters or, beginning January 1, 2014, for less than 12 calendar quarters, the client employer's unemployment tax rate will be based on the client employer's prior account and experience.

(C) If the client employer's account has been terminated for more than 1 year of if the client employer never previously registered with the agency, the client shall be separately registered using a method approved by the agency within 30 days after the employer becomes a client employer of the PEO. The client employer shall be assigned the new employer unemployment tax rate. [MCL 421.13m(2)(a).]

## B. THE CONSOLIDATED APPEALS

In these appeals, it is undisputed that each claimant became a client employer of a professional employer organization that operated in this state before January 1, 2011, and which, for that reason, was not required to change its reporting method until January 1, 2014. It is similarly undisputed that each claimant had been a client employer of the professional employer organization for at least eight quarters as of January 1, 2014, and that each claimant had reported no employees or no payroll for those same eight quarters. Finally, it is undisputed that the claimants' professional employer organizations did not change their reporting method until January 1, 2014.

For each claimant, the Agency determined that the claimant was not entitled to the new employer tax rate beginning with tax year 2014. The Agency made that determination on the basis that each claimant had to report no employees or no payroll for 12 quarters because their professional employer organizations did not change their reporting method until January 1, 2014, and the statute provided that "beginning January 1, 2014" the client employer had to have reported "12 or more calendar quarters" of no payroll or employees in order to qualify for the new employer tax rate. See MCL 421.13m(2)(a)(*i*)(A). Each claimant protested the tax rate and asserted that it was entitled to the new employer tax rate because it reported no employees or no payroll for the eight quarters preceding January 1, 2014. The Agency rejected these arguments and refused to apply the new employer tax rate to each claimant's liability for the 2014 and subsequent tax years.

After the Agency rejected their protests, the claimants each appealed to an ALJ. The ALJs each determined that, because each claimant had eight quarters of no employment or payroll before January 1, 2014, the claimants were entitled to the new employer tax rate. The ALJs each reasoned that MCL 421.13m(2)(a)(*i*)(A) established the date before which a client employer must have had the requisite eight quarters and was not a reference to the date on and after which the number of quarters increased to 12. The Commission and circuit courts affirmed

-4-

the ALJ in each case. The Agency then applied for leave to appeal in this Court, and this Court granted leave to appeal in each case and consolidated the cases.[1]

## II. ANALYSIS

We review de novo the proper interpretation of a statutory scheme such as MESA. *Polania v State Employees' Retirement Sys*, 299 Mich App 322, 328; 830 NW2d 773 (2013). Our Supreme Court has provided the following rules to guide the proper construction of statutes:

> In determining the intent of the Legislature, this Court must first look to the language of the statute. The Court must, first and foremost, interpret the language of a statute in a manner that is consistent with the intent of the Legislature. As far as possible, effect should be given to every phrase, clause, and word in the statute. The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended. Moreover, when considering the correct interpretation, the statute must be read as a whole. Individual words and phrases, while important, should be read in the context of the entire legislative scheme. While defining particular words in statutes, we must consider both the plain meaning of the critical word or phrase and its placement and purpose in the statutory scheme. A statute must be read in conjunction with other relevant statutes to ensure that the legislative intent is correctly ascertained. The statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme. Moreover, courts must pay particular attention to statutory amendments, because a change in statutory language is presumed to reflect either a legislative change in the meaning of the statute itself or a desire to clarify the correct interpretation of the original statute. Finally, an analysis of a statute's legislative history is an important tool in ascertaining legislative intent. [*Bush v Shabahang*, 484 Mich 156, 166-168; 772 NW2d 272 (2009) (internal citations and quotation marks omitted).]

The criteria at issue on appeal involves MCL 421.13m(2)(a)(*i*)(A), which states that, "[e]xcept as provided in sub-subparagraphs (B) and (C), if the client employer reported no employees or no payroll to the agency for 8 or more calendar quarters or, beginning January 1, 2014, for 12 or more calendar quarters, the client employer's unemployment tax rate will be the new employer tax rate." The sole question is whether the ALJs properly interpreted and applied MCL 421.13m(2)(a)(*i*)(A).

In the various lower court proceedings and again on appeal, the claimants argue that the reference to January 1, 2014, in MCL 421.13m(2)(a)(*i*) refers only to the point by which the

---

[1] See *Dep't of Talent & Economic Dev v Ambs Message Ctr, Inc*, unpublished order of the Court of Appeals, entered October 29, 2018 (Docket No. 343521); *Dep't of Talent & Economic Dev v Great Oaks Country Club*, unpublished order of the Court of Appeals, entered October 29, 2018 (Docket No. 343846); *Dep't of Talent & Economic Dev v NBC Truck Equip*, unpublished order of the Court of Appeals, entered October 29, 2018 (Docket No. 343989).

claimant must have had eight quarters of no reported employees or payroll. Stated another way, the claimants would have this Court construe "beginning January 1, 2014" to mean "as of January 1, 2014." However, that construction is untenable because it renders portions of the statutory scheme nugatory. See *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003).

Under MCL 421.19(a)(1)(*i*), any employer—whether a client employer represented by a professional employer organization or a self-reporting employer—that has not had workers in covered employment for 12 consecutive calendar quarters is treated as a new employer if it should again become liable for contributions. As such, there was no reason for the Legislature to provide that, beginning January 1, 2014, any client employer who has no employees or payroll for 12 quarters would qualify as a new employer. Moreover, because all professional employer organizations had to switch to the new reporting method on and after January 1, 2014, see MCL 421.13m(2)(a)(*ii*), a client employer who had employees or payroll would necessarily be unable to report no employees or payroll on or after January 1, 2014, simply because it has an agreement with a professional employer organization. Accordingly, using the claimants' preferred construction, no client employer that had reported fewer than eight quarters of no payroll or employees by that time could ever meet the criteria, notwithstanding that the Legislature clearly understood that some client employers might meet the 12-quarter period stated under MCL 421.13m(2)(a)(*i*)(A). That construction renders the 12-quarter period meaningless. This Court may not apply a construction that renders a portion of the statutory scheme meaningless or nugatory. See *Klapp*, 468 Mich at 468.

The additional criteria stated under MCL 421.13m(2)(a)(*i*) must be understood as a compromise that allowed business entities that switched to being client employers less than three years before the enactment of MCL 421.13m, or within a specified period after the enactment of that statute, to still qualify for the new-employer tax rate even though the entity would not otherwise have qualified under MCL 421.19(a)(1)(*i*). For those professional employer organizations that waited to change their method of reporting on the date that the reporting requirements became mandatory, only those client employers who had been client employers since on or before the enactment of the new law would qualify for the new employer tax rate. When interpreted in this way, the shorter lookback period can be seen as a compromise that prevents client employers from being penalized should their professional employer organizations change to the new reporting method before the mandatory date for the change. And indeed the Legislature specifically provided that the rate rules stated under MCL 421.13m(2)(a)(*i*) applied to a "client employer" that "was a client employer of the PEO on the date that the PEO *changed to the reporting method* provided" under MCL 421.13m(2)(a). (Emphasis added). Hence, the plain language of the statute demonstrates that the date of the change to the method required under MCL 421.13m(2)(a) is the event that triggers the lookback provisions.

In the cases before this Court, it is undisputed that each claimant's professional employer organization changed its reporting method on January 1, 2014. As such, the longer lookback period applied. It was also undisputed that each claimant had reported, at the most eight, quarters of no employees or payroll by that time. Consequently, under the plain terms of the statute, none of the claimants were entitled to the new employer tax rate under MCL 421.13m(2)(a)(*i*).

III. CONCLUSION

The statute at issue was not ambiguous and provided that the shorter lookback periods applied only when a professional employer organization that was operating in this state before January 1, 2011, elected to change its reporting method before January 1, 2014. Because the professional employer organizations for each of the claimants waited until January 1, 2014, to change their reporting method, the longer lookback period applied to each claimant. As such, the claimants were not entitled to the new employer tax rate unless they had 12 quarters of not reporting payroll or employees. It is undisputed that none of the claimants met this requirement. Accordingly, the Agency did not err when it concluded that the claimants were not entitled to the new employer tax rate.

Therefore, we reverse the circuit courts in each docket, and vacate the relevant circuit court orders, the Commission decisions, and the ALJ decisions. In each docket we further remand these cases to the respective ALJs for entry of decisions upholding the Agency's tax determinations for the relevant tax years.

Reversed, vacated, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood