*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision
until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOANN SCANLAND,

      Plaintiff-Appellant/Cross-Appellee,

v

BEAUMONT HOSPITAL and JOSEPH FINCH,

      Defendants-Appellees/Cross-
      Appellants,

and

BEAUMONT HOSPITAL OF DEARBORN,
formerly known as OAKWOOD MAIN OF
DEARBORN,

      Defendant-Appellee.

UNPUBLISHED
October 3, 2019

No. 342851
Wayne Circuit Court
LC No. 17-001342-NH

Before: RIORDAN, P.J., and K. F. KELLY and CAMERON, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting summary disposition pursuant to MCR 2.116(C)(7) (release) in favor of defendants, Beaumont Hospital ("Beaumont"), Beaumont Hospital of Dearborn, formerly known as Oakwood Main of Dearborn ("Beaumont Dearborn"), and Joseph Finch ("Dr. Finch"). On cross-appeal, Beaumont and Dr. Finch appeal the trial court's denial of their request for sanctions against plaintiff for the filing of a frivolous pleading. We affirm.

## I. BASIC FACTS

In November 2007, plaintiff underwent a total hip replacement surgery at Beaumont Dearborn, which was at that time known as "Oakwood Main in Dearborn." The surgery was performed by Dr. Finch. During the surgery, Dr. Finch implanted a "Stryker Rejuvenate model hip" implant ("the hip implant"). Ultimately, plaintiff suffered from complications because of defects in the hip implant. The hip implant was voluntarily recalled by "Stryker Orthopaedics" ("Stryker") in June 2012.

-1-

In January 2017, plaintiff filed a complaint against defendants pertaining to Dr. Finch's failure to properly diagnose her medical condition, alleging that he provided her with "misinformation regarding her hip implant" and that he failed to monitor her "progress," all of which resulted in plaintiff suffering injuries because of the defects in the hip implant. However, in February 2017, plaintiff assented to a Master Settlement Agreement and release pertaining to a separate settlement with Stryker and Howmedica Osteonics Corporation ("Howmedica"). Subsequently, counsel for Howmedica learned of plaintiff's litigation against Dr. Finch and Beaumont, the implanting surgeon and hospital, and admonished plaintiff by letter that her claims were covered within the scope of the release of all claims. It was requested that plaintiff dismiss the pending lawsuit, or Howmedica would move to intervene in the litigation and enforce the settlement. Dr. Finch filed his own motion for summary disposition premised on the release, and Beaumont concurred in and joined with the dispositive motion. Plaintiff alleged that the release did not apply to her claims raised against defendants because they failed to provide notice of the recall, they were not parties to the release, they did not provide consideration, and they were not intended third-party beneficiaries of the release. The trial court held that the language of the release applied to the implanting surgeon and hospital and granted both motions for summary disposition because it was "clear the intent of Stryker was to put the entire issue to bed forever . . . .," but denied defendants' request for sanctions for filing a frivolous action.

## II. APPLICABLE LAW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). "Similarly, whether contract language is ambiguous is a question of law that we review de novo," and "the proper interpretation of a contract is also a question of law that we review de novo." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003) (citations omitted).

"MCR 2.116(C)(7) permits summary disposition 'because of release, payment, prior judgment, [or] immunity granted by law.' " *Clay v Doe*, 311 Mich App 359, 362; 876 NW2d 248 (2015) (alteration in original). As explained by this Court,

> When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 428-429; 789 NW2d 211 (2010) (citations omitted).]

> This Court's main goal in the interpretation of contracts is to honor the intent of the parties. The words used in the contract are the best evidence [of] the parties' intent. When contract language is clear, unambiguous, and has a definite meaning, courts do not have the ability to write a different contract for the parties, or to consider extrinsic testimony to determine the parties' intent. [*Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 225; 911 NW2d 493

-2-

(2017), quoting *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 446; 886 NW2d 445 (2015) (alteration in original).]

"A claim may be barred because of a release." *Cole v Ladbroke Racing Michigan, Inc*, 241 Mich App 1, 13; 614 NW2d 169 (2000). "The scope of a release is governed by the intent of the parties as it is expressed in the release. If the text in the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the language of the release." *Id*. "A contractual term is ambiguous on its face only if it is equally susceptible to more than a single meaning." *Barton-Spencer v Farm Bureau Life Ins Co of Mich*, 500 Mich 32, 40; 892 NW2d 794 (2017) (citations omitted).

"The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity." *Cole*, 241 Mich App at 14, citing *Gortney v Norfolk & Western R Co*, 216 Mich App 535, 540; 549 NW2d 612 (1996). In this regard, "there is no broader classification than the word 'all.' " *Cole*, 241 Mich App at 14 (citation and quotation marks omitted). Nonetheless, "extrinsic evidence may be used to show that a latent ambiguity exists." *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010) (citations omitted). "A latent ambiguity exists when the language in a contract appears to be clear and intelligible and suggests a single meaning, but other facts create the necessity for interpretation or a choice among two or more possible meanings." *Id*. at 668 (quotation marks and citations omitted). "To verify the existence of a latent ambiguity, a court must examine the extrinsic evidence presented and determine if in fact that evidence supports an argument that the contract language at issue, under the circumstances of its formation, is susceptible to more than one interpretation." *Id*. (citation omitted). "Then, if a latent ambiguity is found to exist, a court must examine the extrinsic evidence again to ascertain the meaning of the contract language at issue." *Id*. (citation omitted).

## III. THE RELEASE

Plaintiff argues that the trial court erred when it granted summary disposition because it failed to consider whether the release contained any latent ambiguities, it failed to apply terms found only in the Master Settlement Agreement to the release, and it permitted defendants to rely upon the release when they failed to raise the affirmative defense of release in their first responsive pleadings.[1] We disagree.

Plaintiff filed her complaint in January 2017, raising a claim of medical malpractice against Dr. Finch and a claim of vicarious liability against the Beaumont defendants pertaining to complications from defects in the hip implant. Dr. Finch had performed the surgery in 2007. In February 2017, plaintiff signed a "blue release form" ("the release") relative to the case involving defects in the hip

---

[1] At the outset, we note that while plaintiff generally discusses third-party beneficiaries to contracts in her brief on appeal, she fails to articulate any cognizable argument that defendants were not third-party beneficiaries to the release. " 'A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim.' " *Southfield Ed Ass'n v Bd of Ed of Southfield Pub Sch*, 320 Mich App 353, 379; 909 NW2d 1 (2017), quoting *Nat'l Waterworks, Inc v Int'l Fidelity & Surety, Ltd*, 275 Mich App 256, 265; 739 NW2d 121 (2007). Therefore, plaintiff has abandoned any contentions relating to whether defendants were third-party beneficiaries. Moreover, the trial court's ruling appeared to conclude that defendants were encompassed in the clear broad language of the release and did not obtain relief through a third-party beneficiary theory.

implant. She was a "RELEASOR" pertaining to a "Stryker ABG II/Rejuvenate Modular-Neck Hip Stem Settlement Program," and the release arose from a "Master Settlement Agreement" that was the result of negotiations between Stryker, Howmedica, and a "Plaintiffs' Settlement Committee.[2]" The release stated that it pertained to plaintiff's claims "against the RELEASEES arising from, related to, or in any way connected with (1) the implantation, use and removal, revision and/or additional surgery(ies) of the ABG II Modular-Neck Hip Stem or the Rejuvenate Modular-Neck Hip Stem . . ." and "(2) any injury, losses, or damages of any kind presently claimed, or which could be claimed at any time in the future, to have been caused, in whole or in part" by those products "and/or any surgery or surgeries related to any such" product. The release defined the term "RELEASEES" as Howmedica, Stryker, and "any and all individuals and entities identified or referenced in Section 1.2.70 of the [Master] Settlement Agreement." Section 1.2.70 of the Master Settlement Agreement provided, in pertinent part,

> "Released Party" and "Released Parties" means (i) HOC [i.e., Howmedica], (ii) Stryker Corporation, (iii) any other defendants currently or formerly named in any litigation a claimant has brought Relating to an Affected Product, (iv) . . . any physicians, healthcare professionals, or hospitals connected with the prescription, implantation, use or removal of the Affected Products that a Settlement Program Claimant allegedly used or uses . . . .

Under the terms of the release, plaintiff agreed to "completely" release and "forever" discharge "RELEASEES from any and all past, present or future claims, demands, obligations, actions, causes of action, liabilities, wrongful death claims, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever, whether based on a tort, redhibition, contract, or any other theory of recovery, and whether for compensation, actual damages, or exemplary damages, which" plaintiff had at that time "or which may hereafter accrue or otherwise be acquired on account of, or which may in any way grow out of [plaintiff's] use of the [hip implant], the Subject Surgery or Surgeries and the matters set forth and/or referenced in [the release]." Further, the release provided that "RELEASOR AND RELEASEE intend this release to be construed as broadly as possible." Additionally, the release provided that plaintiff was agreeing to release "all claims, demands, injuries, losses, damages, actions and causes of action of every kind and nature, known or unknown, existing, claimed to exist, or which can hereafter be made, arising out of or resulting from or which are in any way connected with the matters and things set forth in this Release and/or the [Master] Settlement Agreement," except for "potential future claims related" to any failure of a Stryker "revision femoral stem" because of alleged defects in that device.

Plaintiff signed the release form. Plaintiff's trial counsel also signed it, certifying that he had informed plaintiff of "the terms and legal effect" of the release, and that neither he nor plaintiff had "any objections to the terms of this Release . . . ." Our review of the plain language of the release and settlement agreement and the intent as expressed in the release demonstrates that it included defendants in light of the language addressing "any physicians, healthcare professionals, or hospitals connected with the prescription, implantation, use or removal of the Affected Products that a Settlement Program

---

[2] The "Plaintiffs' Settlement Committee" was comprised of "certain counsel" from "a New Jersey state multi-county litigation venued in Bergen County" and "a federal multi-district litigation venued in the United State District Court for the District of Minnesota."

Claimant allegedly used or uses . . . ." *Cole*, 241 Mich App at 13. Consequently, the trial court properly granted summary disposition to defendants, and plaintiff's attempt to characterize her complaint as exempt from the release because of a claim for failure to notify of a recall is without merit.

## IV. AMBIGUITY

Plaintiff asserts that the trial court failed to consider whether there was a latent ambiguity in the release pertaining to whether plaintiff released her claims against these defendants. Plaintiff's argument is based on extrinsic evidence. Her assertion is without merit.

The extrinsic evidence plaintiff relies upon includes an affidavit in which plaintiff asserted that her "intention in signing" the release "was to release Stryker and Homedica [sic]," and her "impression of the language contained within the release was the release pertained to only the defective product and any future claims [she] could bring against Stryker or Homedica [sic] as a result of the defective" hip implant. In her brief on appeal, plaintiff also explains that before she signed the release her trial counsel "apprised Jamie, Stryker's claims specialist of the pending lawsuit in writing." Jamie did not respond, and therefore plaintiff and her trial counsel "reviewed, signed[,] and submitted" the release.

As explained by the Michigan Supreme Court, a patent ambiguity "arises from the face of the document." *Kendzierski v Macomb Co*, 503 Mich 296, 317; 931 NW2d 604 (2019) (quotation marks and citation omitted). Further, "[t]he fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity." *Cole*, 241 Mich App at 14, citing *Gortney*, 216 Mich App at 540. " 'This court has many times held that one who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms.' " *Farm Bureau Mut Ins Co of Mich v Nikkel*, 460 Mich 558, 567-568; 596 NW2d 915 (1999), quoting *Komraus Plumbing & Heating, Inc v Cadillac Sands Motel, Inc*, 387 Mich 285, 290; 195 NW2d 865 (1972). Plaintiff's subjective interpretation of the terms of the contract as relayed in her affidavit does not demonstrate that there was a latent ambiguity in the contract, and it is unclear how plaintiff's trial counsel sending a "Late Registration" e-mail to "Jamie" with an attached copy of his retainer agreement with plaintiff containing handwritten alterations constituted a "negotiation" with Stryker such that the release did not apply to these defendants. Plaintiff has failed to provide any extrinsic evidence that Stryker intended to exclude plaintiff's claims against defendants, or that plaintiff even attempted to "negotiate" with Stryker, perhaps because the terms of the Master Settlement Agreement were established on December 19, 2016 between Stryker and a "Plaintiffs' Settlement Committee" comprised of counsel from two separate cases being litigated outside of Michigan. Accordingly, there is no evidence that plaintiff or her counsel were involved in those negotiations.

Similarly, the other "extrinsic" evidence fails to establish any patent ambiguity. Under the terms of the release, plaintiff agreed to release her claims against the "RELEASEES," a term that was defined to include "any and all individuals and entities identified or referenced in Section 1.2.70 of the [Master] Settlement Agreement," which provided that the "releasees included "any other defendants currently or formerly named in any litigation a claimant has brought Relating to an Affected Product" and "any physicians, healthcare professionals, or hospitals connected with the prescription, implantation, use or removal of the Affected Products that a Settlement Program Claimant allegedly used or uses . . . ." The terms of the release do not demonstrate any ambiguity; they are not equally susceptible to more than a single meaning. And since defendants were either "physicians" or "hospitals" that were "connected

with the prescription, implantation, use or removal" of the hip implant, defendants fell within the definition of the term "RELEASEES."

Plaintiff asserts that there was also a "latent" ambiguity in the release as to the scope of the claims being released based upon her interpretation of the plain language of the release. However, as discussed above, plaintiff's reliance upon her interpretation of the plain language goes to a potential patent ambiguity. Regardless, the release provided that plaintiff agreed to release the "RELEASEES" "from any and all past, present or future claims . . . which may in any way grow out of [plaintiff's] use of the [hip implant], the Subject Surgery or Surgeries and the matters set forth and/or referenced in [the release]." Additionally, it provided that "RELEASOR AND RELEASEE intend this release to be construed as broadly as possible." The terms of the release are not equally susceptible to more than a single meaning. Therefore, plaintiff's understanding does not establish the existence of a patent ambiguity.[3]

## V. AFFIRMATIVE DEFENSE

Plaintiff argues that the trial court erred when it permitted defendants to rely upon the release because defendants waived the affirmative defense of release when they failed to raise it in their first responsive pleadings. We disagree. "A party generally must raise the affirmative defense of release in his first responsive pleading or be deemed to have waived the defense." *Meridian Mut Ins Co v Mason-Dixon Lines, Inc*, 242 Mich App 645, 647; 620 NW2d 310 (2000), citing MCR 2.111(F)(3) and MCR 2.116(D)(2). However, this Court has ruled that where a defendant moves for summary disposition based on a release "within a reasonable time of discovering the release" and "no indication exists that plaintiffs suffered any unfair prejudice," then a defendant's "failure to assert the release in its first responsive pleading [does] not prevent it from subsequently raising the issue." *Meridian*, 242 Mich App at 648, citing *Romska v Opper*, 234 Mich App 512, 522; 594 NW2d 853 (1999), overruled in part on other grounds by *Shay*, 487 Mich at 676.

Plaintiff filed her complaint in January 2017, and in February 2017, plaintiff signed the release. The defendants filed their answers in February 2017 after plaintiff signed the release. Plaintiff provided the release to the Beaumont defendants in January 2018. Subsequently, in January 2018, Dr. Finch filed his motion for summary disposition based in part on plaintiff's execution of the release.

---

[3] We also reject plaintiff's contention that her claim is one of ordinary negligence for failure to warn of the recall because such a claim is nonetheless covered within the scope of the release. *Cole*, 241 Mich App at 13. Plaintiff also cannot obtain appellate relief premised on her contention that the release was merely a document necessary to submit her claim for inclusion in the settlement agreement and contrary to public policy if her settlement request was subsequently rejected. The plain language of the settlement is not in accordance with plaintiff's attempt to limit its terms, and her hypothetical public policy argument is without merit in light of her acceptance and inclusion in the settlement. Finally, plaintiff challenges the trial court's failure to apply New Jersey law. However, there is no choice-of-law provision in the release. Plaintiff fails to explain where the release incorporates or even references the choice-of-law provision of the Master Settlement Agreement, or why the terms of the Master Settlement Agreement might govern the release. Plaintiff's challenge is without merit in light of her abandonment of the issue. *Southfield Ed Ass'n*, 320 Mich App at 379 (quotation omitted).

Plaintiff contends that defendants' failure to timely raise the affirmative defense of release or to request leave to amend their first responsive pleadings cannot be excused because defendants learned of the release in October 2017, and, therefore, defendants did not first raise the release when it became legally available. Plaintiff does not support her assertion that defendants learned of the release in October 2017 with any citation to the lower court record. It appears that defendants first definitively learned of the release in January 2018, when plaintiff responded to the discovery request. Additionally, plaintiff fails to explain how she was prejudiced when Dr. Finch raised the issue of the release in his motion for summary disposition within 10 days of plaintiff providing a copy of the release. Therefore, plaintiff has failed to demonstrate how the trial court erred when it permitted defendants to rely upon the release.

## VI. SANCTIONS

On cross-appeal, defendants assert that the trial court erred when it denied defendants' request for sanctions against plaintiff for submitting frivolous filings. We disagree.

"A trial court's findings with regard to whether a claim or defense was frivolous, and whether sanctions may be imposed, will not be disturbed unless it is clearly erroneous." *1300 LaFayette E Coop, Inc v Savoy*, 284 Mich App 522, 533; 773 NW2d 57 (2009), citing *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). " 'A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made.' " *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 730; 909 NW2d 890, 905 (2017), quoting *Kitchen*, 465 Mich at 661-662.

"MCR 2.114(E), MCR 2.625(A)(2), and MCL 600.2591(1), not only authorize but require a court to sanction an attorney or party that files a frivolous action or defense." *Meisner Law Group*, 321 Mich App at 731. And "trial courts possess the inherent authority to sanction litigants and their counsel, including the power to dismiss an action." *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006). " 'Whether a claim is frivolous within the meaning of MCR 2.114(F) and MCL 600.2591 depends on the facts of the case.' " *Meisner Law Group PC*, 321 Mich App at 731, quoting *Kitchen*, 465 Mich at 662.

"The purpose of imposing sanctions for asserting frivolous claims 'is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose.' " *BJ's & Sons Constr Co, Inc v Van Sickle*, 266 Mich App 400, 405; 700 NW2d 432 (2005), quoting *FMB-First Mich Bank v Bailey*, 232 Mich App 711, 723; 591 NW2d 676 (1998). " 'The determination whether a claim or defense is frivolous must be based on the circumstances at the time it was asserted.' " *Robert A Hansen Family Trust v FGH Indus, LLC*, 279 Mich App 468, 486; 760 NW2d 526 (2008), quoting *Jerico Constr, Inc v Quadrants, Inc*, 257 Mich App 22, 36; 666 NW2d 310 (2003). "Not every error in legal analysis constitutes a frivolous position." *Kitchen*, 465 Mich at 663. " 'A claim is devoid of arguable legal merit if it is not sufficiently grounded in law or fact[.]' " *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589; 884 NW2d 587 (2015), quoting *Adamo Demolition Co v Dep't of Treasury*, 303 Mich App 356, 369; 844 NW2d 143 (2013) (alteration in original).

Defendants requested that the trial court impose sanctions against plaintiff for failing to voluntarily dismiss her claims based on the release. They assert that plaintiff's claims were devoid of

arguable legal merit given the terms of the release. However, they fail to explain how plaintiff's claims were completely devoid of arguable legal merit. Plaintiff filed her initial complaint before she signed the release but despite the broad and unambiguous language of the release, plaintiff's trial counsel contended that ambiguities in the release demonstrated that the release did not affect plaintiff's claims against defendants. However, "[n]ot every error in legal analysis constitutes a frivolous position." *Kitchen*, 465 Mich at 663. Although plaintiff's legal analysis was ultimately unavailing, that fact alone is not enough to demonstrate that the trial court clearly erred when it denied defendants' request for sanctions against plaintiff.

A reiteration of the weakness of plaintiff's arguments does not intrinsically show that the trial court clearly erred when it determined that plaintiff's filings were not frivolous. The court may have found that plaintiff's claims were at a minimum supported by arguments that had at least some arguable legal merit even if those arguments failed. As previously noted, " '[a] party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim.' " *Southfield Ed Ass'n*, 320 Mich App at 379, quoting *Nat'l Waterworks, Inc*, 275 Mich App at 265. Since defendants have failed to specifically address how the trial court clearly erred when it denied their request for sanctions, their arguments fail.

Affirmed.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Thomas C. Cameron