# STATE OF MICHIGAN

# COURT OF APPEALS

GRASS LAKE IMPROVEMENT BOARD,

        Petitioner-Appellee/Cross-
Appellant,

v

DEPARTMENT OF ENVIRONMENTAL
QUALITY,

        Respondent-Appellant/Cross-
Appellee.

FOR PUBLICATION
July 19, 2016
9:15 a.m.

No. 326571
Ingham Circuit Court
LC No. 2014-001064-AA

Before: Wilder, P.J., and Murphy and O'Connell, JJ.

WILDER, P.J.

In these cross-appeals arising out of a contested administrative proceeding, the parties appeal from the circuit court's order reversing the decision of an administrative law judge (ALJ) and awarding attorney fees to petitioner, Grass Lake Improvement Board (the Board). We reverse the circuit court and reinstate the decision of the ALJ.

## I. FACTUAL BACKGROUND

The attorney fees at issue were incurred in a previous contested case under the administrative procedures act of 1969 (APA), MCL 24.201 *et seq.*, which was initiated by the Board against respondent, Department of Environmental Quality (DEQ) [Administrative Hearing File, Volumes I and II (AHF)]. The dispute between the parties arose after the Board filed an application seeking a permit to use an "augmentation well" to pump water into Grass Lake and thereby increase its water level. In June 2009, DEQ denied the Board's application. [AHF, pp 1040, 1046.] In response, the Board filed a petition seeking review of DEQ's decision in a contested case [AHF, pp 1064-1065].

The pivotal issue in the contested case was whether the Board's proposed augmentation well would "enlarge" Grass Lake as that term is used in Part 301 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.30101 *et seq.*, specifically in MCL 324.30102(1) ("Except as provided in this part, a person without a permit from the department shall not do any of the following. . . . Create, *enlarge*, or diminish an inland lake or stream.") (emphasis added). Part 301 of the NREPA does not define the term "enlarge," but, at the time

-1-

DEQ denied the Board's application, the Michigan Administrative Code provided[1] a definition at Mich Admin Code, R 281.811(1)(e):

> "enlarge or diminish an inland lake or stream" means the dredging or filling of bottomlands, or the dredging of adjacent shorelands, to increase or decrease a body of water's surface area or storage capacity or the placement of fill or structures, or the manipulation, operation, or removal of fill or structures, to increase or decrease water levels in a lake, stream, or impoundment.

The Board argued that, under the above definition of "enlarge," its proposed activity of raising the water level by constructing an augmentation well did not constitute an enlargement of Grass Lake. Thus, the Board argued, DEQ's denial of the Board's application was improper under the department's own administrative rules. [AHF, pp 698-700.]

DEQ responded that, as interpreted by both DEQ and an advisory opinion of our Attorney General's office, "the plain language of the statute [MCL 324.30102(1)] . . . clearly includes adding water to a lake to increase its volume and surface area[.]" [AHF, pp 601-602, 634-635.] DEQ acknowledged that the above interpretation of MCL 324.30102(1) was contrary to Mich Admin Code, R 281.811(1)(e). Nevertheless, citing the well-settled principle that "when a statute and an administrative rule conflict, the statute controls," DEQ argued that, to the extent its administrative rule conflicted with the plain meaning of MCL 324.30102(1), DEQ was required to follow the statute and ignore the rule [AHF, p 611].

In reply, the Board argued that, under established Michigan law, administrative agencies, such as DEQ, have a duty to follow their own duly promulgated administrative rules. Citing in support *Micu v City of Warren*, 147 Mich App 573; 382 NW2d 823 (1985), the Board further argued that DEQ's duty to follow Rule 281.811(1)(e) extended even to a situation, such as this, where DEQ believed the rule was contrary to the plain meaning of a statute. [AHF, pp 591-593.]

After considering the matter, the ALJ decided in the Board's favor, reasoning as follows:

> [DEQ] contends that it "has worked for years to change the existing administrative rule [Rule 281.811(1)(e)], but such changes can take a very long time due to debate amongst the relevant stakeholders as to what should be changed, and how it should be changed, etc." By making this statement, [DEQ] is acknowledging the very reason why it must follow its administrative rules. When [DEQ] is able to ignore its own administrative rule, it is able to create and enforce policy without considering the input and interests of relevant stakeholders. Reconciling stakeholder interests is an important part of the rulemaking process. Allowing [DEQ] to circumvent its rules through an alternate interpretation bypasses the steps which were created in the APA to account for and protect relevant stakeholders and public interests. The statutory language taken on its

---

[1] Mich Admin Code, R 281.811 has since been amended to remove the definition at issue here. 2015 Mich Reg 5, p 75 (April 1, 2015).

own seems broad enough to include the [Board]'s proposed activity (i.e. lake enlargement). However, the rule defining the term "enlargement" clearly limits the [DEQ]'s jurisdiction to activities taking place on bottomlands. Based upon the application of the Rule . . . and other documentary evidence submitted, the proposed lake augmentation project does not implicate Part 301 jurisdiction.

I conclude as a matter of law that the proposed lake augmentation project, that is the act of adding water to the lake without activity on bottomlands, does not implicate the Department's jurisdiction under Part 301. There is no enlargement of Grass Lake. [AHF, p 579 (citation omitted).]

Following a motion for reconsideration, the ALJ's opinion and order was adopted by DEQ Director Dan Wyant [AHF, p 437]. Thereafter, the remaining issues were summarily dismissed by stipulation of the parties, the contested case was concluded, and DEQ issued the requested permit to the Board [AHF, pp 9-10, 333-334].

Afterwards, the Board initiated a second contested case, in which it sought its attorney fees related to the first contested case. Relevant to this appeal, the Board argued that, under MCL 24.323(1), it was entitled to such fees because DEQ's legal position in the prior contested case was "devoid of arguable legal merit." [AHF, pp 108-112.] The ALJ denied the Board's request for attorney fees, deciding that DEQ's legal position had at least *some* arguable legal merit:

Entitlement to relief under § 123(1)(c) may [] be summarily eliminated based on the [Board]'s argument, that "[t]his case is one that has numerous complex legal and technical issues." In reviewing the proceedings and pleadings in this case, the [Board]'s characterization of the "numerous complex legal . . . issues," is accurate. Given this, [QED]'s positions cannot be deemed to be devoid of arguable legal merit under MCL 24.323(1)(c). [AHF, pp 10-11 (footnote omitted)].

The Board appealed in the circuit court, which reversed the ALJ's fee decision:

The ALJ below found that [QED]'s position was not devoid of arguable legal merit. . . . The [Board] argues, and this [c]ourt agrees, that this determination fails as a reasoned determination by an administrative agency. The ALJ failed to make any conclusions of fact or law. The ALJ failed to point out any particulars within the record to support such a conclusion. He cited no legal authority and provided no reasoning whatsoever in support of his conclusion. This is the very definition of arbitrary and capricious: unreasoned, without reference to guiding principles or considerations, and a decisive exercise of will or caprice.

Furthermore, [the Board] argues that [QED]'s position was frivolous by being devoid of legal merit. This [c]ourt agrees. The [QED]'s position was that there existed a conflict of law between a statute, Part 301[ of the NREPA], and an administrative rule, [] Rule 281.811. The [QED] argued that where such conflicts exist, the statute prevails over the rule[.]

* * *

However, [] Director [Wyant] found in his final order that . . . the language of the statute and the language of the Rule were not conflicting per se. The statute at issue does not define what it means to "enlarge" a lake or stream, where that is precisely what the Rule does. The Rule's narrow interpretation of the statue is not a direct conflict.

Furthermore, Michigan case law makes it clear that administrative agencies must follow their own rules once properly promulgated. *MICU*[, 147 Mich App at 584]. . . . Here, not only did [DEQ] knowingly violate its own rule, it apparently did so for years without attempting to re-promulgate [sic] a new rule. Given the overwhelming case law that condemns this exact behavior, it is clear the reliance on a policy that prescribes that behavior is devoid of legal merit, and therefore, the [DEQ]'s position in this case was frivolous. This [c]ourt grants [the Board]'s motion for fees and costs incurred defending its case in the Michigan Administrative Hearing System. [Circuit Court Order, pp 3-4.]

The instant cross-appeals followed.

## II. STANDARDS OF REVIEW

We review the circuit court's decision to determine whether it "applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *City of Sterling Heights v Chrysler Group, LLC*, 309 Mich App 676, 681; 873 NW2d 342 (2015) (quotation marks and citation omitted). We review the circuit court's interpretation and application of statutes de novo. *Glenn v TPI Petroleum, Inc*, 305 Mich App 698, 702; 854 NW2d 509 (2014). On the other hand, an administrative agency's statutory interpretation is reviewed under the standard first enunciated in *Boyer-Campbell Co v Fry*, 271 Mich 282; 260 NW 165 (1935):

[T]he construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons. However, these are not binding on the courts, and [w]hile not controlling, the practical construction given to doubtful or obscure laws in their administration by public officers and departments with a duty to perform under them is taken note of by the courts as an aiding element to be given weight in construing such laws and is sometimes deferred to when not in conflict with the indicated spirit and purpose of the legislature. [*In re Complaint of Rovas*, 482 Mich 90, 101, 108; 754 NW2d 259 (2008) (second alteration in original), quoting *Boyer-Campbell*, 271 Mich at 296-297 (quotation marks and citations omitted).]

"Respectful consideration" of an agency's statutory interpretation is not akin to "deference," at least as that "term is commonly used in appellate decisions" today. *Rovas*, 482 Mich at 108. While an agency's interpretation can be a helpful aid in construing a statutory provision with a "doubtful or obscure" meaning, our courts are responsible for finally deciding whether an

-4-

agency's interpretation is erroneous under traditional rules of statutory construction. *Id.* at 103, 108-109.

III. ANALYSIS

On appeal, DEQ argues that the circuit court applied incorrect legal principles when it reversed the ALJ's decision. We agree.

In pertinent part, MCL 24.323 provides:

> (1) The presiding officer that conducts a contested case shall award to a prevailing party, other than an agency, the costs and fees incurred by the party in connection with that contested case, *if the presiding officer finds that the position of the agency to the proceeding was frivolous*. To find that an agency's position was frivolous, the presiding officer shall determine that *at least 1* of the following conditions has been met:
>
> > (a) The agency's primary purpose in initiating the action was to harass, embarrass, or injure the prevailing party.
> >
> > (b) The agency had no reasonable basis to believe that the facts underlying its legal position were in fact true.
> >
> > (c) *The agency's legal position was devoid of arguable legal merit*.
>
> (2) If the parties to a contested case do not agree on the awarding of costs and fees under this section, a hearing shall be held if requested by a party, regarding the awarding of costs and fees and the amount thereof. . . . [Emphases added.]

Under MCL 24.325(1), "a party that is dissatisfied with the final action taken by the presiding officer under section 123 [MCL 24.323] in regard to costs and fees may seek judicial review of that action pursuant to chapter 6." The reviewing court "may modify" the presiding officer's "action only if the court finds that the failure to make an award or the making of an award was an abuse of discretion, or that the calculation of the amount of the award was not based on substantial evidence." MCL 24.325(2); *Widdoes v Detroit Pub Sch*, 218 Mich App 282, 289; 553 NW2d 688 (1996). If the reviewing court "awards costs and fees to a prevailing party upon judicial review of the final action of a presiding officer in a contested case," then the reviewing court "shall award those costs and fees provided for in [MCL 24.323], if the court finds that the position of the state involved in the contested case was frivolous." MCL 600.2421d; *Widdoes*, 218 Mich App at 289.

The circuit court decided that, under MCL 24.323(1)(c), DEQ's legal position in the original contested case was frivolous. In reaching that conclusion, the circuit court applied an incorrect legal standard. The circuit court reasoned that, because DEQ's legal position was "devoid of legal merit," it necessarily followed that DEQ's legal "position in this case was frivolous." [Circuit Court Order, pp 3-4.] But whether an argument has "legal merit" is not the proper legal question to be considered by the circuit court. Rather, the standard, as announced

by MCL 24.323(1)(c), is whether DEQ's legal position "was devoid of *arguable* legal merit." (Emphasis added.)

There is little authority interpreting the language of MCL 24.323(1)(c). Fortunately, however, there are many cases interpreting the nearly identical language found in MCL 600.2591(3)(a).[2] See, e.g., *Adamo Demolition Co v Dep't of Treasury*, 303 Mich App 356, 368; 844 NW2d 143 (2013). We find such authority highly persuasive here. "A claim is not frivolous merely because the party advancing the claim does not prevail on it." *Id.* Instead, "a claim is devoid of *arguable* legal merit if it is not sufficiently grounded in law or fact, such as when it violates basic, longstanding, and unmistakably evident precedent." *Id.* at 369 (quotation marks, citations, and footnotes omitted; emphasis added).

Here, although DEQ did not prevail in the prior contested case, its legal position was sufficiently grounded in law as to have some *arguable* legal merit. There is an undeniable tension between the legal rules cited by the parties in the prior contested case. On one hand, as DEQ argued below, it has long been recognized by Michigan Courts that, due to the very nature of an administrative agency's rulemaking power, when a statute and an administrative rule conflict, the statute necessarily controls. See *Rovas*, 482 Mich at 98 ("While administrative agencies have what have been described as 'quasi-legislative' powers, such as rulemaking authority, these agencies cannot exercise legislative power by creating law or changing the laws enacted by the Legislature."); *Mich Sportservice v Nims*, 319 Mich 561, 566; 30 NW2d 281 (1948) ("The provisions of the rule must, of course, be construed in connection with the statute itself. In case of conflict, the latter governs. It is not within the power of the department of revenue to extend the scope of the act."); *Acorn Iron Works v Auditor Gen*, 295 Mich 143, 151; 294 NW 126 (1940) ("The state board of tax administration from time to time has changed its construction and method of enforcing the sales tax law as it affects building trade transactions; but in this connection it is sufficient to note that liability for payment of the sales tax is controlled by statute. It cannot be imposed by rulings or regulations of the board."); *Walgreen Co v Macomb Twp*, 280 Mich App 58, 71; 760 NW2d 594 (2008) ("A rule is invalid when it conflicts with the provisions of the governing statute.").

On the other hand, it is equally well-settled, as the Board argued below, that agencies are bound to follow their own duly promulgated rules. See *Detroit Base Coalition for Human Rights*

---

[2] MCL 600.2591(3)(a) provides:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

*of Handicapped v Dep't of Social Services*, 431 Mich 172, 189; 428 NW2d 335 (1988) ("An agency is under a duty to follow its own rules."); *Micu*, 147 Mich App at 584 ("[O]nce promulgated, the rules made by an agency to govern its activity cannot be violated or waived by the agency that issued the rules."); *Rand v Civil Serv Comm*, 71 Mich App 581, 586; 248 NW2d 624 (1976) ("An administrative agency, in addition to following constitutional and statutory mandates, must also comply with its own rules.").

Given the tension between such precedents as they apply to the facts of the prior contested case, we conclude that the ALJ did not clearly abuse his discretion. DEQ's legal position was sufficiently grounded in law as to have at least some arguable legal merit, and hence it was not "frivolous" under MCL 24.323(1)(c).[3]

Accordingly, we reverse the circuit court and reinstate the decision of the ALJ. As the prevailing party, DEQ may tax costs pursuant to MCR 7.219.

/s/ Kurtis T. Wilder
/s/ William B. Murphy
/s/ Peter D. O'Connell

---

[3] Having reached that conclusion, we need not address the additional issues raised in the parties' cross-appeals regarding the propriety of the *amount* of costs and attorney fees awarded by the circuit court.