*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

EMAGINE ENTERTAINMENT, INC., CH ROYAL
OAK, LLC, NORTHSTAR THEATER PARTNERS,
LLC, CINEMA HOLLYWOOD, LLC, CH
CANTON, LLC, and CH NOVI, LLC,

      Petitioners-Appellees,

v

DEPARTMENT OF TREASURY,

      Respondent-Appellant.

FOR PUBLICATION
November 19, 2020
9:15 a.m.

No. 350376
Tax Tribunal
LC No. 17-000296-TT

---

EMAGINE ENTERTAINMENT, INC., CH ROYAL
OAK, LLC, NORTHSTAR THEATER PARTNERS,
LLC, CINEMA HOLLYWOOD, LLC, CH
CANTON, LLC, and CH NOVI, LLC,

      Petitioners-Appellants,

v

DEPARTMENT OF TREASURY,

      Respondent-Appellee.

No. 350881
Tax Tribunal
LC No. 17-000296-TT

---

Before: REDFORD, P.J., and RIORDAN and TUKEL, JJ.

PER CURIAM.

-1-

In these consolidated appeals,[1] respondent, Department of Treasury, appeals by right the Michigan Tax Tribunal's (MTT) order granting summary disposition to petitioners (hereinafter collectively referred to in the singular as "Emagine")[2] under MCR 2.116(C)(10) (no genuine issue of material fact). (Docket No. 350376.) Emagine appeals as of right from the same order, following the MTT's order denying Emagine's motion for reconsideration. (Docket No. 350881.) We affirm.

## I. FACTS & PROCEDURAL HISTORY

Petitioner Emagine owns and operates several movie theaters in Michigan and sells food and beverage items at concession stands. From February 2010 to February 2014, Emagine paid tax on sales of bottled water and prepackaged candy, but subsequently came to believe that paying this sales tax was unnecessary because the sales on those items were exempt. Emagine sought a refund for the sales tax paid during the four-year period. Respondent granted a refund for taxes related to the sales of bottled water, but maintained that the sales of prepackaged candy were not exempt because they were not "unprepared food" pursuant to Mich Admin Code, R 205.136(5) ("Rule 86(5)").

Emagine filed a complaint in the MTT alleging that sales of the other food items were exempt from sales tax and that Emagine had not collected sales tax from its customers, thereby entitling Emagine to a refund. Emagine and respondent were subsequently able to "narrow the dispute" and to narrow the relevant time period to January 2013 to December 2013, and the parties agreed that the refund amount for this period totals $79,026.27. Emagine and respondent filed cross-motions for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). The administrative law judge (ALJ) issued a proposed opinion and judgment granting in part Emagine's motion for summary disposition and denying respondent's motion for summary disposition. The ALJ ruled that the sale of the prepackaged candy was exempt from the Michigan General Sales Tax Act ("GSTA"), MCL 205.78. *et seq.*, and that Rule 86(5) was invalid because it conflicted with the plain language of the statute. The ALJ then concluded that there was an issue of fact regarding whether Emagine was entitled to a refund. The MTT agreed with the ALJ's conclusions, and following an additional hearing to resolve the remaining factual issue, the MTT concluded that Emagine was not entitled to a refund. This appeal followed.

## II. STANDARDS OF REVIEW

Our review of the MTT's decision is limited. *Mich Properties, LLC v Meridian Twp*, 491 Mich 518, 527; 817 NW2d 548 (2012). The MTT's factual findings are final if they are supported by competent, material, and substantial evidence on the whole record, but when the facts are not disputed and fraud is not alleged, our review is limited to whether the MTT made an error of law or adopted a wrong principle. *Id*. at 527-528. The scope of an administrative agency's statutory

---

[1] *Emagine Entertainment, Inc v Dep't of Treasury*, unpublished order of the Court of Appeals, entered October 9, 2019 (Docket Nos. 350376 and 350881).

[2] Emagine is the parent corporation, and it owns and operates the various subsidiary limited liability companies, which are theaters.

rulemaking authority and whether an agency has exceeded that authority, whether an administrative rule is arbitrary and capricious, and whether a rule comports with the intent of the Legislature, are questions of law reviewed de novo. *Mich Farm Bureau v Dep't of Environmental Quality*, 292 Mich App 106, 127; 807 NW2d 866 (2011).

Issues of statutory interpretation are reviewed de novo. *Mich Properties, LLC*, 491 Mich at 528. When interpreting statutes, we must ascertain and give effect to the intent of the Legislature and avoid a construction that would render any part of the statute surplusage or nugatory. *Id*. Moreover, "the statute must be read as a whole," and "[i]ndividual words and phrases, while important, should be read in the context of the entire legislative scheme." *Id*.

Additionally, we review de novo a decision on summary disposition. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). A motion is properly granted pursuant to MCR 2.116(C)(10) when "there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law." *Dextrom*, 287 Mich App at 415. We "must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Id*. at 415-416.

## III. ANALYSIS

Respondent Department of Treasury argues that the MTT erroneously held that Emagine was exempt from paying tax for the sale of prepackaged candy. Specifically, respondent argues that the MTT committed error requiring reversal when it concluded that Rule 86(5) was invalid because it conflicted with the plain language of MCL 205.54g(4). We disagree.

An administrative agency has power "to interpret the statutes they are bound to administer and enforce." *Clonlara, Inc v State Bd of Ed*, 442 Mich 230, 240; 501 NW2d 88 (1993). "[W]hen a statute and an administrative rule conflict, the statute necessarily controls." *Grass Lake Improvement Bd v Dep't of Environmental Quality*, 316 Mich App 356, 366; 891 NW2d 884 (2016). "While administrative agencies have what have been described as 'quasi-legislative' powers, such as rulemaking authority, these agencies cannot exercise legislative power by creating law or changing the laws enacted by the Legislature." *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 98; 754 NW2d 259 (2008). Although the agency's interpretation is entitled to respectful consideration, it is not binding on Michigan courts and cannot conflict with the Legislature's intent as expressed in the language of the statute at issue. *Id*. at 103.

MCL 205.54g(1)(a) exempts from sales tax all food "except prepared food intended for immediate consumption." Prepared food is defined by MCL 205.54g(4):

(4) "Prepared food" means the following:

(a) Food sold in a heated state or that is heated by the seller.

(b) Two or more food ingredients mixed or combined by the seller for sale as a single item.

(c) *Food sold with eating utensils provided by the seller*, including knives, forks, spoons, glasses, cups, *napkins, straws,* or plates, but not including a container or packaging used to transport the food. [Emphasis added.]

The statute excludes the following items from this definition of "prepared food":

(a) Food that is only cut, repackaged, or pasteurized by the seller.

(b) Raw eggs, fish, meat, poultry, and foods containing those raw items requiring cooking by the consumer in recommendations contained in section 3-401.11 of part 3-4 of chapter 3 of the 2001 food code published by the Food and Drug Administration of the Public Health Service of the Department of Health and Human Services, to prevent foodborne illness.

(c) Food sold in an unheated state by weight or volume as a single item, without eating utensils.

(d) Bakery items, including bread, rolls, buns, biscuits, bagels, croissants, pastries, doughnuts, danish, cakes, tortes, pies, tarts, muffins, bars, cookies, and tortillas, sold without eating utensils. [MCL 205.54g(5).]

Rule 86(4) parrots MCL 205.54g(1)(a):

(a) "Prepared food" means any of the following:

(*i*) Food sold in a heated state or that is heated by the seller.

(*ii*) Two or more food ingredients mixed or combined by the seller for sale as a single item.

(*iii*) Food sold with eating utensils *provided by the seller.* [Emphasis added.]

Rule 86(5) elaborates on eating utensils and defines the phrase "provided by the seller":

(5) An eating utensil is considered a tool, instrument, or item used or intended to be used to facilitate the eating of food. Examples of eating utensils include, but are not limited to, knives, forks, spoons, ice cream/popsicle sticks, skewers, glasses, cups, napkins, straws, and plates. The following apply:

(a) An eating utensil does not include a container or packaging used to transport food, such as a plastic carton in which take-out soup or salad is sold. A waxed paper sheet used to select an item, such as a donut or cookie, and then placed in a box or bag for transport with the baked good, is not considered an eating utensil.

(b) *Eating utensils are "provided by the seller"* under all of the following conditions:

(*i*) For a seller with a prepared food sales percentage *greater than 75%*, eating utensils are "provided by the seller" when the *utensils are made available to purchasers*.

(*ii*) For a seller with a prepared food sales percentage *of 75% or less*, eating utensils are "provided by the seller" if the seller's practice, as represented by the seller, *is to physically give or hand the utensils to purchasers*. Plates, bowls, glasses, or cups necessary for the purchaser to receive the food, for example, a glass for a dispensed soft drink or milk, or a plate for salad from a salad bar, need only be made available. [Emphasis added.]

Thus, Rule 86(5)(b) includes a "75% test," providing that if a seller's prepared food sales percentage was 75% or less, eating utensils would be deemed "provided by the seller" if the seller's practice was to physically give or hand utensils to the purchasers, whereas if the percentage was greater than 75% they would be deemed provided if made available. According to respondent, the sales of prepackaged candy are not exempt under this test because more than 75% of Emagine's sales were devoted to prepared food and Emagine made eating utensils, such as napkins, available to their customers.

Respondent argues that Rule 86(5)(b) does not conflict with the statute because it merely defines the statutory terms more precisely. The statute provides that food is not exempt if it is food that is sold with eating utensils that are provided by the seller; such utensils include napkins. MCL 205.54g(4)(c). The statute does not define or explain the phrase "provided by the seller." Rather than provide a simple definition, respondent promulgated a rule that goes beyond the statutory language and establishes the 75% test whereby the definition of "provided by the seller" changes depending on the taxpayer's percentage of sales. This 75% test, and the distinction it draws, is not found in the statute, either explicitly or by implication. The statute clearly states that food sold with eating utensils provided by the seller would not be exempt—full stop. It makes no attempt to distinguish between food that is above or below a particular sales percentage.

The statute provides that food will not be exempt if it is "sold *with* eating utensils provided by the seller." MCL 205.54g(4)(c) (emphasis added). The statute does not define the word "with," and we apply the dictionary definition to give "undefined statutory terms their plan and ordinary meanings." *Alken-Ziegler, Inc v Hague*, 283 Mich App 99, 102; 767 NW2d 668 (2009). *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "with" as "used as a function word to indicate combination, accompaniment, presence, or addition," or "inclusive of." Using this definition, we conclude that the statute contemplates that the eating utensils must specifically *accompany* the food or be *added* to it. This fits more in line with physically handing or providing the utensils to customers while selling the food; merely making the utensils available in other parts of an establishment is insufficient and does not fit within the ordinary definition of "with."

Moreover, respondent's interpretation of MCL 205.54g(4)(c) which excludes from exemption all food in which there happens to be utensils available *somewhere* in the establishment, renders the other definitions in MCL 205.54g(4)(a) and (b) meaningless. The presence of *any* eating utensils *anywhere* in the establishment would cause *all* food sold in the establishment, regardless of the food's characteristics, to be excluded from exemption. Each word must be given meaning, and no interpretation may be used that would render parts of a statute surplusage or

nugatory. See *Nyman v Thompson Reuters Holdings, Inc*, 329 Mich App 539, 544; 942 NW2d 696 (2019). In application, the 75% test means that, so long as the 75% threshold is met, all food sold by the taxpayer becomes "prepared food" simply because of the *presence* of eating utensils, like napkins, within the establishment, when they are made available to customers, and it is irrelevant whether the food items are heated, or mixed with two or more ingredients, etc. Thus, Rule 86(5) goes beyond merely defining statutory terms and swallows the remainder of MCL 205.54g(4)'s definitions. Thus, because it conflicts with the plain language of the statute, Rule 86(5) is invalid and the MTT correctly analyzed the disputed food items only under the statute and not under the rule.

Respondent unpersuasively argues that the rule is valid because respondent had authority to administer the Streamlined Sales and Use Tax Agreement ("SSUTA") and that the SSUTA allows for this test. Respondent contends that, in order for Michigan to remain in compliance with the SSUTA, it "had" to pass this rule because, seemingly, the 75% is *not* mandated by statute. However, respondent defeats its own argument by conceding that Michigan has not adopted the 75% test by statute and that respondent, accordingly, attempted to remedy this "defect" by writing a rule to alleviate what it considers to be a statutory gap.

Michigan is a member of the 23-state SSUTA, which "is a multistate compact designed to reduce the burden on out-of-state businesses of complying with state sales and use taxation." *Ally Financial Inc v State Treasurer*, 502 Mich 484, 499 & n 32; 918 NW2d 662 (2018). However, any parts of the SSUTA that "are inconsistent with our law do not have effect and *may not be read as invalidating or amending any provision of our law*." *Id*. at 499 n 33 (emphasis added). The GSTA, of which MCL 205.54g is a part, was passed by the Michigan Legislature and is therefore binding law. Respondent does not argue that the GSTA, or MCL 205.54g, is invalid or should not be followed. MCL 205.54g(4) gives an explicit definition of what constitutes "prepared food," and respondent's rule swallows this definition. In a nutshell, respondent did not have the authority to circumvent the legislative process and administratively amend MCL 205.54g(4)—regardless of whether or not it feels that Michigan is in compliance with the SSUTA.

Emagine argues that the MTT incorrectly concluded that a refund was not required for the erroneously paid taxes related to the prepackaged candy sales. We disagree.

MCL 205.30(1) provides that the Treasury will issue a refund for overpaid taxes. However, MCL 205.73(4) prohibits a person from "enrich[ing] himself or herself or gain[ing] any benefit from the collection or payment of the tax." This is in response to MCL 205.73(1), which permits a business to reimburse itself by adding the sales tax onto the price of the item and passing this cost onto its customers. "[T]he legal responsibility for the sales tax falls on the retail seller, with the tax being levied for the privilege of making sales at retail," but the retailer may choose to "pass the economic burden of the sales tax by collecting the tax at the point of sale from the consumer." *Andrie Inc v Dep't of Treasury*, 496 Mich 161, 169; 853 NW2d 310 (2014). Regardless of "whether the consumer remits sales tax to the retail seller or the seller pays the sales tax from another source, the seller is responsible for remitting the sales tax to the department, which tax is calculated as a percentage of the seller's gross proceeds in a taxable period." *Id*.

In the present case, the MTT's findings were well-supported by the record. Paul Glantz, co-founder and chair of Emagine, testified that Emagine's financial records included *both* the price

of the item and the sales tax for that item. However, he acknowledged that these financial records did not support his belief that the sales tax had been a mere operating expense, and he could not point to any financial records to support his "operating expense" view. Glantz testified about the sales tax and item price being "fungible," but he acknowledged that the financial records did not support this. In fact, Glantz acknowledged that the total tax for the year, which amounted to $206,337.80, came from Emagine's customers and that this was reflected in the financial records. Glantz was shown various financial documents which also reflected that the tax was paid by the customers. Additionally, Emagine's chief financial officer, Dirk Kjolhede, testified that the sales tax had been collected from the customers in order to pay sales tax to the Michigan government.

Emagine highlights that the financial records were incorrect or inaccurate, but this was merely what Glantz believed. These beliefs were based on his personal knowledge, and he was unable to point to any authority in support of his contention. Furthermore, his perceived belief stemmed solely from the lack of signage letting customers know that sales tax was included in the price. In fact, he testified that, at the time of the trial, Emagine used the same customer payment method except for the additional presence of signage. The only difference, therefore, between the old, supposedly incorrect method and the present, supposedly correct method, is the presence of signage. The financial records for both methods are the same. Therefore, Emagine's arguments concerning the accuracy of the financial records is based on Glantz's personal views on how signage supposedly affects sales tax.

Emagine points to *MJR Group, LLC v Dep't of Treasury*, unpublished per curiam opinion of the Court of Appeals, issued December 29, 2016 (Docket No. 329119) (*MJR II*),[3] for support, but that case is factually distinguishable from the instant case and the rationale applied in that case does not support Emagine's argument. MJR owned a chain of movie theaters, and the issue involved sales tax on bottled water and prepackaged candy. Unpub op at 1. Just like Emagine, MJR had mistakenly paid sales tax on exempt items, and it accordingly sought a refund. *Id*. The Department of Treasury denied the refund because it believed MJR had collected the sales tax from its customers. *Id*. The MTT determined that MJR had not collected sales tax from its customers. *Id*. at 2. We affirmed the MTT's determination. *Id*. at 3. However, several facts distinguish *MJR II* from the present case.

There was an absence of documentary evidence in *MJR II*. See *id*. at 2-3. The software used for setting prices did not contain "transactional details," and there was no way to discern whether the sales tax was included in the item price. *Id*. at 2. The case turned on the testimony of two witnesses, one of whom had testified that he did not consider sales tax when setting the prices, and another who, in certain statements, had stated that sales tax was included in the item price. See *id*. This other witness, however, gave inconsistent testimony. *Id*. at 3. Given the deferential standard of review, we merely examined the evidence and held that the MTT's decision was supported because a "reasonable mind" could accept the consistent witness's testimony over that of the inconsistent witness's testimony. See *id*. at 3. Furthermore, some of the inconsistent

---

[3] Unpublished decisions are not precedentially binding. MCR 7.215(C)(1). However, they may provide persuasive value. See *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 356 n 50; 871 NW2d 136 (2015).

witness's statements supported the MTT's conclusions. *Id.*

Here, as previously discussed, none of the financial records shown to Glantz supported his viewpoint that sales tax was an operating expense and not paid by the customers. Moreover, in contrast to *MJR II*, Glantz himself testified that the records showed that customers paid the sales tax. Kjolhede testified similarly. This factual scenario was not present in *MJR II*. Additionally, unlike *MJR II*, the MTT in the present case ruled *against* petitioner and found that sales tax *was* paid by customers. In *MJR II*, we determined that there was evidence supporting the MTT's decision, and the same holds true of the MTT's decision in this case.

Emagine next cites principles of contract law and argues that, in the absence of notice to the customers that they were paying sales tax, no sales tax was paid. The cited authority does not support this position. *Andrie* merely stated that there was no presumption that the sales tax was *always* included in the purchase price and that it must be proven. *Andrie*, 496 Mich at 171-172. Additionally, MCL 205.73(1), provides that a business "shall not advertise or hold out to the public in any manner, directly or indirectly, that the tax imposed under this act *is not considered as an element in the price* to the consumer." (Emphasis added.) In other words, the statute does not require that, in order for sales tax to be collected from a customer for purposes of a sales tax refund, the customer must be explicitly notified of the payment of sales tax. The statute merely prevents a business from inaccurately informing the public that such tax is not considered as part of the price. There is no allegation that Emagine did this in the present case.

Accordingly, the MTT's conclusion that Emagine's customers paid the sales tax was supported by competent, material, and substantial evidence from the record.

## IV. CONCLUSION

The MTT did not err in its conclusion that Rule 86(5) was invalid because it conflicted with MCL 205.54g. The MTT's factual finding, that the mere availability of napkins did not cause the prepackaged candy to become "prepared food" under MCL 205.54g, was supported by competent, material, and substantive evidence. Further, the MTT did not err in its application of MCL 205.54g or in granting Emagine's motion for summary disposition under MCR 2.116(C)(10). Emagine has not demonstrated that it is entitled to a refund for the sales tax paid for the prepackaged candy. Accordingly, we affirm.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Jonathan Tukel