*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KRISTEN KARR,[1]

      Plaintiff-Appellant,

V

KAREN D. MCDONALD,

      Defendant-Appellee.

UNPUBLISHED
May 12, 2026
9:20 AM

No. 376216
Oakland Circuit Court
LC No. 2024-209557-PZ

Before: BORRELLO, P.J., and M. J. KELLY and O'Brien, JJ.

PER CURIAM.

In this action under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, plaintiff, Kristen Karr,[1] appeals as of right the trial court order denying her motion for partial summary disposition, denying her request for sanctions, and granting defendant Karen McDonald's motion for summary disposition under MCR 2.116(C)(10). For the reasons stated in this opinion, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## I. BASIC FACTS

This case arises from Karr's FOIA requests to McDonald, who is the elected Oakland County Prosecutor, for information related to (1) all contracts between the Oakland County Prosecutor's Office/McDonald and Fortis Group, LLC, a security/threat management firm, that were executed between November 30, 2021 and June 25, 2024; (2) all documented threats of violence or harm toward McDonald, her family, or the Oakland County Prosecutor's Office made between November 30, 2021 and June 25, 2024; (3) all contracts between the Oakland County Prosecutor's Office/McDonald and the Washington Post that were executed between November 30, 2021 and July 25, 2024; (4) all contracts between the Oakland County Prosecutor's Office/McDonald and all news media outlets that were executed between November 20, 2021 and July 25, 2024, and (5) all contracts between the Oakland County Prosecutor's Office/McDonald

---

[1] Karr is a mother and victim advocate whose children attended the Oxford Community School District at the time of the shootings at Oxford High School on November 30, 2021.

-1-

and all public relations (PR) companies that were executed between November 30, 2021 and August 1, 2022. For each of the five requests, McDonald answered by providing Karr a 10-day extension letter. She did not further respond to the requests during the 10-day extension, nor did she respond to multiple e-mail requests for updates on the status of the FOIA requests.

Having received no response, on September 3, 2024, Karr filed this cause of action seeking to compel production of the records requested in her FOIA requests. After she filed this lawsuit, McDonald finally responded to her FOIA requests. With regard to the FOIA request included in Count I of the complaint, seeking contracts between McDonald and Fortis Group, McDonald denied the request on the basis that the records sought "did not exist." As to the FOIA request in Count II of Karr's complaint, seeking documented threats against McDonald, her family, and her staff, McDonald responded that the requested information was exempt under the FOIA. Concerning the FOIA request in Count III of the complaint, in which Karr sought records of a contract between McDonald and representatives of the Washington Post, McDonald responded by granting the request. With respect to the FOIA requests in Counts IV and V of the complaint, which sought records of contracts between McDonald and news media outlets and PR groups, McDonald granted Karr's requests.

Before discovery was completed, the parties filed cross-motions for summary disposition. Karr also filed a motion seeking sanctions against McDonald, asserting that McDonald's legal positions were frivolous. Following a hearing on the motions, the trial court issued a written opinion and order denying Karr's motion for partial summary disposition, granting McDonald's motion for summary disposition, and denying Karr's motion for sanctions.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Karr argues that the trial court erred by granting summary disposition to McDonald under MCR 2.116(C)(10). The trial court's decision on a motion for summary disposition is reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Id*. at 120 (citations omitted).]

### B. ANALYSIS

Karr contends that factual disputes exist regarding whether the records requested in the FOIA request in Count I existed and whether McDonald made full production of the requested records in response to the FOIA requests in Counts III, IV, and V. She maintains that additional

discovery would have yielded evidence in support of her claims.[2]   "Generally, summary disposition under MCR 2.116(C)(10) is premature if it is granted before discovery on a disputed issue is complete." *Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009).

> However, the mere fact that the discovery period remains open does not automatically mean that the trial court's decision to grant summary disposition was untimely or otherwise inappropriate.  The question is whether further discovery stands a fair chance of uncovering factual support for the opposing party's position.  In addition, a party opposing summary disposition cannot simply state that summary disposition is premature without identifying a disputed issue and supporting that issue with independent evidence.  The party opposing summary disposition must offer the required MCR 2.116(H) affidavits, with the probable testimony to support its contentions. [*Id*. at 292-293 (citations omitted).]

Here, Karr submitted an affidavit as required under MCR 2.116(H).  Thus, the question is whether she met her burden of showing that there was a fair chance that further discovery would uncover factual support for her position.

## 1. CONTRACTS WITH FORTIS GROUP

We first consider whether the trial court erred by finding that summary disposition was warranted with regard to Count 1, which related to Karr's FOIA request for "[a]ll contracts between the Oakland County Prosecutors Office (Karen McDonald) and Fortis Group LLC executed between 11/30/21 and 6/25/24."  The record reflects that this request was denied on September 24, 2024.  In support of the denial, McDonald submitted an affidavit from her Chief Assistant Prosecuting Attorney David Williams, who averred that the Oakland County Prosecutor's Office had "conducted a diligent search for all records requested and it was determined that no such records exist."  Notably, Williams did not state that *no* contract existed between the Oakland County Prosecutors Office/McDonald and Fortis Group, only that no such contract was executed during the timeframe identified in Karr's request.

---

[2] McDonald argues that Karr waived any claim that summary disposition was granted prematurely before discovery was completed.  A party's failure to raise an issue in the trial court generally results in the waiver of appellate consideration of that issue.  See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008).  Here, during a status conference, Karr's lawyer generally agreed with the trial court that the case could be dispensed with by way of summary disposition motions and that the issues presented questions of law rather than of fact.  However, at the hearing on the motions for summary disposition, Karr's lawyer expressly argued that McDonald's motion for summary disposition was prematurely filed and requested that the matter proceed "to discovery."  Given that the issue was explicitly raised before the trial court, there is no basis for concluding that Karr waived the issue.

Because the evidence submitted was sufficient to establish that summary disposition was warranted, the burden shifted to Karr to establish a genuine issue of material fact for trial and to properly support her response with admissible evidence. See MCR 2.116(G)(4) and *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016). In her affidavit, Karr declared that she planned to call McDonald to question her regarding the circumstances under which Fortis Group was hired and the reasons why a contract did not exist. Further, Karr produced documentary evidence revealing that Fortis Group provided services to McDonald and that Fortis Group was paid at least $171,000 for those services. Karr also provided documentation showing that a $100,000 contract existed between the Oakland County Prosecutors Office and the PR firm Moment Strategies. She surmises that because more money was paid to Fortis Group than to Moment Strategies, a contract must also exist with Fortis Group. However, as noted above, Williams's affidavit only provides that no contract with Fortis Group was *executed* in the timeframe identified by Karr. That does not preclude the existence of a contract with Fortis Group executed outside that timeframe. Thus, the existence of a contract with Moment Strategies is not evidence that a contract with Fortis Group must have also been executed in the relevant timeframe. Karr bore the burden of setting forth specific facts to show that there was a genuine issue of material fact. See *Lowrey*, 500 Mich at 7. On this record, she has not done so. Accordingly, the trial court did not err by summarily dismissing her claim under Count I, and summary disposition was not premature because Karr failed to establish that there was a fair possibility that additional discovery would uncover support for her position.

## 2. NEWS MEDIA CONTRACTS

Next we consider the trial court's decision to summarily dismiss Karr's claims under Counts III and IV of her complaint, which related to her FOIA request for all contracts between the Oakland County Prosecutors Office/McDonald and the Washington Post/all media news outlets that were executed during the identified period of time. McDonald granted the request for production, and, according to Williams's affidavit, all responsive documents were produced. Again, that shifted the burden to Karr to establish the existence of a genuine issue of material fact.

With regard to the documentation produced relating to the Washington Post, Karr notes that it appeared to be electronically signed by the Washington Post representative, but that there was no date for the signature and no verification page. She asserts that, as a result, there are questions as to whether the document was actually executed and whether it was valid. Her questions as to the validity of the contract do not establish that another contract with the Washington Post must exist, however.

Next, with regard to the request for all contracts that were executed in the identified timeframe with all other news media outlets, the only document produced was a letter from ABC News Studio indicating its interest in filming a documentary and obtaining background information. Karr contends that, on its face, the ABC correspondence is not a contract. Further, she presented photographic excerpts from the Hulu documentary *Sins of the Parents: The Crumbley Trials*, which reveal that the ABC News and Hulu staff had access to the office of the Oakland County Prosecutor's Office, meetings with the staff, and its files. Karr speculates that a contract must have been entered into because it would have been wholly irresponsible to not have a contract given the sensitive nature of the areas where film crew was given access to and the fact that there was a gag-order related to the Oxford Shooting case. Yet, the documentary evidence

she submitted did not yield factual disputes on the existence of a contract with any news media or outlet. Consequently, the trial court did not err by summarily dismissing Karr's claims under Count III and IV, and summary disposition was not premature because Karr again failed to establish that there was a fair possibility that additional discovery would uncover support for her position.

### 3. CONTRACTS WITH PR COMPANIES

The trial court also dismissed Karr's claim under Count V of her complaint, which related to the request for all contracts between the Oakland County Prosecutors Office/McDonald and all PR companies that were executed during the identified timeframe. McDonald granted this request. Williams attested in his affidavit that all documents responsive to this request were produced. The burden, therefore, shifted to Karr to show that there was a genuine issue of material fact with regard to whether all documents had, in fact, been produced. Karr again notes that a contract with Moment Strategies was produced. Based upon that fact, she maintains that a contract must also exist with regard to another public relations group, Identity PR, which had provided services to McDonald after the Oxford High School shooting. Indeed, she submitted documentation showing that $35,893.25 was paid to Identity PR. Karr questioned why a contract existed with Moment Strategies, but not with Identity PR. However, once again the record yielded no factual support that a contract did in fact exist with Identity PR. The fact that a contract existed—and was produced—in relation to Moment Strategies does not mean that such a contract was executed with Identity PR during the timeframe identified in the FOIA request. Summary disposition, therefore, was warranted because there was no genuine issue of material fact related to whether all responsive records had been produced. And summary disposition was not prematurely granted because Karr also once more failed to establish that there was a fair possibility that additional discovery would uncover support for her position.

### 4. THREATS OF VIOLENCE OR HARM

We next consider Karr's argument that the trial court erred by summarily dismissing Count II of her complaint, which related to her request for all threats against McDonald, her family, and the Oakland County Prosecutors Office during an identified timeframe. McDonald denied this request, asserting that the information sought was exempt from disclosure under the following exemptions set forth in MCL 15.243:

> (b) Investigating records compiled for law enforcement purposes, but only to the extent that disclosure as a public record would do any of the following:

> (*i*) Interfere with law enforcement proceedings.

> * * *

> (*vi*) Endanger the life or physical safety of law enforcement personnel.

> * * *

(u) Records of a public body's security measures, including security plans, security codes and combinations, passwords, passes, keys, and security procedures, to the extent that the records relate to the ongoing security of the public body.

\* \* \*

(y) Records or information of measures designed to protect the security or safety of persons or property, or the confidentiality, integrity, or availability of information systems, whether public or private, including, but not limited to, building, public works, and public water supply designs to the extent that those designs relate to the ongoing security measures of a public body, capabilities and plans for responding to a violation of the Michigan anti-terrorism act, chapter LXXXIII-A of the Michigan penal code, 1931 PA 328, MCL 750.543a to 750.543z, emergency response plans, risk planning documents, threat assessments, domestic preparedness strategies, and cybersecurity plans, assessments, or vulnerabilities, unless disclosure would not impair a public body's ability to protect the security or safety of persons or property or unless the public interest in disclosure outweighs the public interest in nondisclosure in the particular instance.

Under the FOIA, the public has a "broad right" to inspect public records, and the FOIA's overarching policy is one of full disclosure. *Herald Co*, *Inc v Eastern Mich Univ Bd of Regents*, 265 Mich App 185, 194; 693 NW2d 850 (2005) (*Hearld Co, Inc I*). The public body bears the burden of proof to demonstrate why it is entitled to exempt a public record from disclosure. *Federated Publications, Inc v Lansing*, 467 Mich 98, 108; 649 NW2d 383 (2002), abrogated on other grounds by *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 471; 719 NW2d 19 (2006) (*Herald Co, Inc II*). But by enacting the FOIA, the Michigan Legislature "clearly determined" that certain circumstances exist under which revealing records would undermine rather than further the purpose of ensuring good governance. *Herald Co, Inc I*, 265 Mich App at 194. Therefore, there are specific exemptions that may override the public's right to disclosure. *Id*.

Our Supreme Court has cautioned that the trial court is to remain acutely aware of the special consideration that the Legislature has given to certain records that are exempt under FOIA. *Herald Co, Inc II*, 475 Mich at 473. It is also well settled that the FOIA statutory scheme is prodisclosure, and therefore the exemptions are narrowly construed. *Herald Co v Bay City*, 463 Mich 111, 119; 614 NW2d 873 (2000). When reviewing whether a public body's assertion of an exemption was appropriate under FOIA, the appropriate timeframe to be considered is the time when the exemption was asserted. *State News v Mich State Univ*, 481 Mich 692, 703; 753 NW2d 20 (2008). This is because the public body relies on the information that is available to it at that time when making a judgment whether the requested records are exempt from disclosure. *Id*.

In the trial court, McDonald relied on the affidavits of Williams as justification for asserting the exemptions under MCL 15.243(1)(b)(*i*) and (*vi*). In *Evening News Ass'n v City of Troy*, 417 Mich 481, 503; 339 NW2d 421 (1983), our Supreme Court explained that the following rules should be used when considering a claim of exemption from FOIA:

1. The burden of proof is on the party claiming exemption from disclosure.

2. Exemptions must be interpreted narrowly.

3. [T]he public body shall separate the exempt and nonexempt material and make the nonexempt material available for examination and copying.

4. [D]etailed affidavits describing the matters withheld must be supplied by the agency.

5. Justification of exemption must be more than conclusory, i.e., simple repetition of statutory language. A bill of particulars is in order. Justification must indicate factually how a particular document, or category of documents, interferes with law enforcement proceedings.

6. The mere showing of a direct relationship between records sought and an investigation is inadequate. [Citations and quotation marks omitted; alterations in original.]

Here, although we are certainly aware of the stated need to protect McDonald, her family, her staff, law enforcement, as well as the integrity of ongoing criminal investigations, we cannot overlook the fact that Williams's affidavits in and of themselves were based on conclusory and generalized statements and did not provide the trial court with any particularized facts or reasons stating how release of the requested information would "[i]nterfere with law enforcement proceedings" or "[e]ndanger the life or physical safety of law enforcement personnel." MCL 15.243(1)(b)(*i*) and (*vi*). Williams's supplemental affidavit did not provide *any* factual details regarding what records had been withheld from disclosure. And although his supplemental affidavit made clear that McDonald had received threats of violence that had led to criminal investigations, his averments did not otherwise indicate how release of the requested information would undermine and interfere with the criminal investigations or put the safety of law enforcement personnel at risk. A trial court's determination that disclosure of records "could" interfere with an investigation will not satisfy the law-enforcement exemption. *Id*. at 506. And merely showing a direct relationship between the records requested and a pending investigation will not meet the requirements of MCL 15.243(1)(b)(*i*) or (*vi*). *Evening News*, 417 Mich at 503. The statements in Williams's affidavits are very general, conclusory, and did not offer the particularized justification that the statute demands as set forth in Michigan caselaw.

Additionally, no explanation was provided regarding why McDonald could not provide redacted information pursuant to her obligation in MCL 15.240(1) in an effort to avoid compromising the criminal investigation or putting the safety of law enforcement personnel at risk. See *Evening News*, 417 Mich at 503. Likewise, the trial court's upholding of McDonald's assertion of the claimed exemptions also did not reflect that McDonald had met her statutory obligation or burden of showing that disclosure would interfere with law enforcement proceedings or endanger the lives or physical safety of law enforcement personnel. Accordingly, the trial court erred as a

matter of law because its ruling does not comply with the statutory dictates of MCL 15.243(1)(b)(*i*) or (*vi*).[3]

Reversal is, therefore, required. We remand to the trial court to allow it to (1) review a bill of particulars or detailed affidavit regarding the substance of the records, and/or (2) hold an *in camera* hearing to review the records at issue so that it can properly determine whether McDonald met her burden of showing that the disclosure of the requested records *would* "[i]nterfere with law enforcement proceedings" or "[e]ndanger the life or physical safety of law enforcement personnel." MCL 15.243(1)(b)(*i*), (*vi*). See *Evening News*, 417 Mich 503, 516 (stating six rules to be used when analyzing a claim of exemption from disclosure under the FOIA and directing the court to engage in a three-step procedure when confronted with claimed exemptions).[4]

Turning to the trial court's decision upholding McDonald's claimed exemptions under MCL 15.243(1)(u) and (y), the trial court held that disclosure of the requested records would "compromise attempts to impose criminal charges and implementation of security measures." However, as we have noted, a review of Williams's affidavits does not provide any factual support or particularized justification for the assertion of these exemptions. Notably, aside from a generalized reference to the Oakland County Board of Commissioners approving supplemental funding for McDonald's security and the Oakland County Sheriff's Office also sharing "security concerns," there was no indication that release of the requested information even touched on Oakland County's or McDonald's safety and security measures. Likewise, aside from mentioning

---

[3] McDonald directs this Court to *King v Oakland Co Prosecutor*, 303 Mich App 222, 234; 842 NW2d 403 (2013) for the proposition that "sensitive information" is deemed exempt from FOIA disclosure when it is "inextricably intertwined" with an active and ongoing investigation. However, in *King*, the trial court did not merely make a generic determination that the exemption was applicable. *Id*. at 233. Instead, after reviewing the disputed records *in camera*, the court determined that the information showed that a criminal investigation was "active, open, and ongoing," and that the information that the plaintiffs had sought about a certain individual's involvement in the crimes was "inextricably intertwined" with additional sensitive information. *Id*. (Quotation marks omitted.) That is, the trial court in *King* gave specific reasons and made "particularized finding[s]" why disclosure would interfere with the law enforcement proceedings. In contrast, in this case, the trial court did not review the records or sufficiently detailed affidavits describing the records *in camera* and its ruling does not contain particularized findings and reasons addressing how disclosure of the records would interfere with law enforcement proceedings or place the safety of law enforcement personnel at risk. As such, affirmance is not warranted based upon *King*.

[4] In *Evening News*, 417 Mich at 515-516, our Supreme Court instructed that there is a three-step procedure that trial courts must follow when reviewing exemptions asserted under the FOIA. While the first step is for the public body to provide "a complete particularized justification as set forth in the six rules," on remand in this case, the trial court should begin at step two, the holding of an *in camera* hearing. This is because the justification that McDonald provided to the trial court was generalized, conclusory, incomplete, and did not meet the requirements of the six-rules analysis in *Evening News*. See *id*. at 503.

that McDonald received "security in the aftermath of the Oxford shooting," there were no details provided regarding whether security measures were in fact undertaken or how release of the records could yield information regarding "security plans, security codes and combinations, passwords, passes, keys, and security procedures." MCL 15.243(1)(u). Ultimately, while the parties disagreed whether the requested records of threats would fall within the ambit of this exemption, the trial court's ruling did not address the narrow issue whether the records Karr sought in the FOIA request in Count II of the complaint would be encompassed within "security plans, security codes," MCL 15.243(1)(u), and the other aspects of security procedures.

Further, in his supplemental affidavit, Williams also did not provide facts or detailed information regarding whether the release of the records would reveal "[r]ecords or information of measures designed to protect the security or safety of persons or property, or the confidentiality, integrity, or availability of information systems . . . including, but not limited to . . . emergency response plans, risk planning documents, [or] threat assessments." MCL 15.243(1)(y). In its ruling, the trial court stated that disclosure of the records would compromise the "implementation of security measures," and that the interest in protecting McDonald, her family, and her staff outweighed the public interest in disclosure of the records. However, aside from citing statutory language from MCL 15.243(1(u) regarding "security measures" that are potentially exempt from disclosure, the court did not explain the security measures to which it was referring or provide additional factual support or reasoning for its determination.

Without having a basic factual understanding of the records that were withheld from disclosure, we are not able to properly review the court's decision and determine if the records fell within the enumerated list of exempted material in MCL 15.243(1)(u) and (y). See *Burns v Detroit* (*On Remand*), 253 Mich App 608, 615; 660 NW2d 85 (2002), mod on other grounds 468 Mich 881 (2003) (noting that this Court is an error-correcting Court, and without being provided a better factual foundation of the records that were withheld, cannot delve into the legal issue whether such records fell within the scope of records exempted under MCL 15.243(1)(u) or (y)). Therefore, on remand, the trial court is to review the records that were withheld and reconsider its conclusion with respect to whether MCL 15.243(1)(u) and (y) were properly asserted as a basis to exempt the records.

III. SANCTIONS

A. STANDARD OF REVIEW

Finally, Karr argues that the trial court erred in denying her motion for sanctions because McDonald asserted a frivolous defense. The trial court's findings regarding whether a defense was frivolous are reviewed for clear error. *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). This Court reviews de novo the issue whether claims are ripe. *King v Mich State Police Dep't,* 303 Mich App 162, 188; 841 NW2d 914 (2013).

To the extent that these issues require this Court to review the trial court's interpretation of provisions of the FOIA, this Court's review is de novo. *American Civil Liberties Union of Mich v Calhoun Co Sheriff's Office*, 509 Mich 1, 8; 983 NW2d 300 (2022). The overarching goal of statutory interpretation is to ascertain the intention of the Legislature as it may be reasonably gleaned from the plain statutory language. *Id*. Courts are to give meaning "to every word, phrase,

and clause in a statute and avoid an interpretation that renders nugatory or surplusage any part of a statute." *Hannay v Dep't of Transp*, 497 Mich 45, 57; 860 NW2d 67 (2014) (quotation marks omitted). This Court will focus on the statutory language and if it is unambiguous, no additional judicial construction is permitted, and this Court will enforce the statute as written. *2 Crooked Creek, LLC v Cass Co Treasurer*, 507 Mich 1, 9; 967 NW2d 577 (2021).

## B. ANALYSIS

In her motion for sanctions, Karr sought to recover costs and attorney fees under MCL 600.2591(1) and MCR 1.109(E). MCL 600.2591 provides, in pertinent part:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

MCR 1.109(E)(6) also provides a basis for a party to seek sanctions for a frivolous defense. As relevant here, under MCL 600.2591(1)(a)(*iii*), a defense is frivolous if "[t]he party's legal position was devoid of arguable legal merit."

"The frivolous-claim-or-defense provisions" of the court rules and MCL 600.2591 require that a lawyer conduct a "reasonable inquiry" into both the factual and legal viability of a pleading before it is signed. *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 731; 909 NW2d 890 (2017). Whether a lawyer's inquiry was reasonable is gauged according to an objective standard. *Id*. The purpose underlying the rule allowing for sanctions for a frivolous defense is to deter parties and their lawyers from asserting defenses "that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *Id*. at 732. The determination whether a defense was frivolous must be made on the basis of the circumstances that existed when the defense was asserted. *Robert A Hansen Family Trust v FGH Industries, LLC*, 279 Mich App 468, 486; 760 NW2d 526 (2008). Whether a defense is frivolous as contemplated by the court rules and MCL 600.2591 is a fact intensive inquiry. *Kitchen*, 465 Mich at 662. Not every error in a legal analysis will amount to a frivolous position. *Robert A Hanson Family Trust*, 279 Mich App at 486.

Here, McDonald moved for summary disposition in part based upon her assertion that Karr's claims were not ripe for the trial court's consideration because she had not made a final determination to deny Karr's requests. To support her position, she cited MCL 15.240(1), which provides:

> (1) If a public body makes a final determination to deny all or a portion of a request, the requesting person may do 1 of the following at his or her option:
>
> \* \* \*
>
> (b) *Commence a civil action in the circuit court*, or if the decision of a state public body is at issue, the court of claims, to compel the public body's disclosure

-10-

of the public records within 180 days after a public body's final determination to deny a request. [Emphasis added.]

McDonald maintained that, prior to Karr filing her complaint, she had not denied the FOIA requests. McDonald's position simply ignores the plain and unambiguous language in MCL 15.235(2) and (3).

MCL 15.235(2) provides:

(2) Unless otherwise agreed to in writing by the person making the request, a public body shall, subject to subsection (10), respond to a request for a public record within 5 business days after the public body receives the request by doing 1 of the following:

(a) Granting the request.

(b) Issuing a written notice to the requesting person denying the request.

(c) Granting the request in part and issuing a written notice to the requesting person denying the request in part.

(d) *Issuing a notice extending for not more than 10 business days the period during which the public body shall respond to the request*. A public body shall not issue more than 1 notice of extension for a particular request. [Emphasis added.]

Here, it was undisputed that McDonald responded to each FOIA request by timely issuing a 10-day extension notice under MCL 15.235(d). McDonald's position that the 10-day extension notice forever satisfied her obligation to timely respond to the FOIA request is directly and unambiguously refuted by the language in MCL 15.235(2)(d) stating that only one 10-day extension shall be issued and that, during the 10-day extension, "the public body *shall* respond to the request."

Under MCL 15.235(3)

(3) Failure to respond to a request under subsection (2) constitutes a public body's final determination to deny the request if either of the following applies:

(a) The failure was willful and intentional.

(b) The written request included language that conveyed a request for information within the first 250 words of the body of a letter, facsimile, electronic mail, or electronic mail attachment, or specifically included the words, characters, or abbreviations for "freedom of information", "information", "FOIA", "copy", or a recognizable misspelling of such, or appropriate legal code reference to this act, on the front of an envelope or in the subject line of an electronic mail, letter, or facsimile cover page.

Here, it is undisputed that Karr's written FOIA requests satisfied MCL 15.235(3)(b) because they included language conveying a request for information within the first 250 words of the body of the e-mails at issue and specifically stated that the requests were made under FOIA. Moreover, the plain and unambiguous statutory language provides that the failure to respond is treated as a final determination to deny the request if either of the circumstances described exists. Accordingly, under MCL 15.235(3)(b), McDonald's failure to respond within the 10-day extension period constituted a final determination to deny the request. Because there was a final determination to deny the request, Karr had 180 days to file an action in the circuit court pursuant to MCL 15.240(1).

"[A] claim is devoid of *arguable* legal merit if it is not sufficiently grounded in law or fact, such as when it violates basic, longstanding, and unmistakable evident precedent." *Grass Lake Improvement Bd v Dep't of Environmental Quality*, 316 Mich App 356, 365; 891 NW2d 884 (2016). McDonald contends that her request for a 10-day extension pursuant to MCL 15.235(2) constitutes a sufficient response to the FOIA requests, and, by extension, renders the requirements of MCL 15.235(3) wholly inapplicable. This interpretation would require this Court to endorse the untenable conclusion that a public body may perpetually evade its statutory obligation to respond to a FOIA request simply by issuing a single 10-day extension notice. McDonald's construction of the statutory scheme would thus render nugatory the express requirement that a substantive response be provided within the prescribed extension period, effectively depriving FOIA requesters of any recourse and undermining the legislative intent. We find no merit in this interpretation. Even in the absence of controlling precedent directly interpreting these statutory provisions, McDonald's position is unsupported by the plain language of the statute and lacks any colorable legal basis. Accordingly, McDonald's ripeness defense is frivolous, and the trial court erred by holding otherwise. The trial court's sanctions order is reversed, and the matter is remanded for further proceedings. On remand, the trial court shall determine the amount of costs and attorney fees recoverable under MCL 600.2591(1) and MCR 1.109(E) considering McDonald's frivolous defense.

Lastly, Karr asserts that McDonald's assertion of exemptions under FOIA were not well-grounded in the law. We have concluded that McDonald's assertions of MCL 15.243(1)(b)(*i*) and (*iv*), (u), and (y) were not stated with the requisite level of particularity. However, reasonable minds could differ on this issue, as reflected by the trial court's ruling upholding McDonald's assertion of the exemptions, and therefore Karr has not made a showing that McDonald's position did not have arguable legal merit and was therefore frivolous. See *Robert A Hanson Family Trust*, 279 Mich App at 486.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction. Neither party having prevailed in full, no taxable costs are awarded. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien